**STATE of Missouri, Respondent,**

v.

**Joseph FRANKLIN, Appellant.**

No. 79735.

Supreme Court of Missouri,
En Banc.

June 16, 1998.

Rehearing Denied July 14, 1998.

Craig A. Johnson, Asst. Public Defender, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for Respondent.

LIMBAUGH, Judge.

Joseph Franklin was convicted of capital murder and sentenced to death. He was also convicted of two counts of felonious assault for which he was sentenced to two concurrent terms of life imprisonment. From the record, Franklin appears to have waived his appeal both orally and in writing at the time of sentencing, but the issue is clouded somewhat by the fact that his lawyers then filed a motion for new trial and that he, himself, executed a motion for leave to file appeal *in forma pauperis*. Thereafter, Franklin's lawyers filed a notice of appeal and briefed and argued the case (including the waiver issue) to this Court. After oral argument, this Court, seeking to determine whether Franklin did, in fact, wish to pursue the appeal, ordered him to respond in writing, one way or the other. Having now received Franklin's response in which he advises unequivocally that he does *not* wish to appeal the case and requests this Court to set an execution date, this Court orders the appeal dismissed.

Despite the dismissal of the appeal, this Court is required to conduct a proportionality review under section 565.014, RSMo 1978.[1] The purpose of the proportionality statute is to ensure that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; that the evidence supports a statutory aggravating circumstance; and that the sentence is not excessive or disproportionate to the penalty imposed in similar cases, considering the

---

1. The 1978 version of this statute controls in this case because the crime was committed in 1977; the 1994 version of this statute, section 565.035, RSMo 1994, only covers crimes occurring after October 1, 1984. Sec. 565.001, RSMo 1994.

crime and the defendant. Sec. 565.014, RSMo 1978. Although Franklin abandoned his appeal, this Court has the benefit of the record on appeal from which to review the evidence.

From that record, this Court finds no evidence that the sentence of death was imposed due to the influence of passion, prejudice, or any other arbitrary factor.

■ This Court also finds that the evidence supports at least two of the three statutory aggravators submitted to and found by the jury. The three aggravators include: 1) that Franklin had a substantial history of serious assaultive convictions; sec. 565.012.2(1), RSMo 1978 (repealed 1984); 2) that Franklin by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon which would normally be hazardous to the lives of more than one person; sec. 565.012.2(3), RSMo 1978 (repealed 1984); and 3) that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved depravity of the mind. Sec. 565.012.2(7), RSMo 1978. Regarding the first aggravator, the record shows that before Franklin committed the murder in this case, he dynamited a synagogue in Hamilton County, Tennessee, and was convicted of the federal offenses of felonious injury to a building with explosives and felonious possession of explosives. These convictions, although based on atrocious conduct, do not constitute a substantial history of serious assaultive convictions because they do not involve assaults upon persons.

■ The remaining aggravating circumstances are amply supported by the evidence adduced at trial. In September of 1977, believing that Jews were "enemies of the white race," Franklin drove to Dallas, Texas after robbing a bank in Little Rock, Arkansas. In Dallas, Franklin bought a 30–06 rifle with a telescopic sight. He then drove to St. Louis, Missouri, checked into a hotel, scouted the city for synagogues, and finally chose Brith Sholom Kneseth Israel Congregation in Richmond Heights.

To prepare for the crime, Franklin bought some ten-inch nails, a guitar case, and a bicycle. He tested the bicycle to assure himself that it could be used to enable him to leave the scene of the crime. He drove the nails into a telephone pole to serve as a rifle rest. Later, he ground the serial number off of the rifle. He then cleaned the rifle, ammunition, and guitar case of any fingerprints and, thereafter, he used gloves to handle the equipment. Lastly, he put the rifle into the guitar case and hid them both in some bushes near the synagogue.

On Saturday, October 8, 1977, Franklin waited outside the synagogue for people to emerge. Shortly before 1:00 p.m., some of the guests left the synagogue and walked toward their cars. Franklin began firing on the guests. He fired five shots from approximately one hundred yards. Gerald Gordon was shot in the left side of his chest and later died from blood loss resulting from damage to his lung, stomach, spleen, and other internal organs. Steven Goldman was grazed on the shoulder. William Ash was wounded in the left hand and later lost his small finger on that hand. Having fired all his ammunition, Franklin abandoned the rifle and the guitar case. He then rode his bicycle to a nearby parking lot where his automobile was parked, hid the bicycle in some bushes, and left St. Louis by car.

■ Under these circumstances, the jury could reasonably find that Franklin knowingly created a great risk of death to more than one person in a public place with a dangerous weapon that would normally be hazardous to the lives of more than one person, and that the murder was outrageously vile, horrible or inhuman in that it involved depravity of the mind. A finding of two of the three statutory aggravating circumstances is sufficient to support an imposition of the death penalty under section 565.014, RSMo 1978. *State v. LaRette*, 648 S.W.2d 96, 102 (Mo. banc 1983).

■ Finally, this Court holds that the punishment is not excessive. To determine whether a sentence is proportionate, this Court compares similar cases where the death sentence was imposed. The sentence of death has been imposed repeatedly for murders similarly carried out pursuant to an elaborate plan. *State v. Copeland,* 928

S.W.2d 828 (Mo. banc 1996); *State v. Leisure*, 749 S.W.2d 366 (Mo. banc 1988); *State v. Guinan*, 665 S.W.2d 325 (Mo. banc 1984); *State v. Smith*, 649 S.W.2d 417 (Mo. banc 1983); *State v. Blair*, 638 S.W.2d 739 (Mo. banc 1982). Death sentences have also been imposed in numerous cases where the murder was an act of depravity. *State v. Johnston*, 957 S.W.2d 734 (Mo. banc 1997); *State v. Hutchison*, 957 S.W.2d 757 (Mo. banc 1997); *State v. Simmons*, 955 S.W.2d 729 (Mo. banc 1997); *State v. Hall*, 955 S.W.2d 198 (Mo.banc 1997); *State v. Roberts*, 948 S.W.2d 577 (Mo.banc 1997); *State v. Tokar*, 918 S.W.2d 753 (Mo. banc 1996). Accordingly, Franklin's punishment is neither excessive nor disproportionate in light of the crime and the strength of the evidence against him.

The sentence of death is affirmed.

All concur.