Joseph Paul FRANKLIN, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 81859.

Supreme Court of Missouri, En Banc.

June 27, 2000.

Rehearing Denied Aug. 29, 2000.

John K. Tucci, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

RONNIE L. WHITE, Judge.

This appeal follows the overruling of Franklin's Rule 29.15 motion. The underlying convictions were for capital murder, section 565.001, RSMo 1978 (repealed in 1984), and two counts of assault with intent to do great bodily harm with malice aforethought, section 559.180, RSMo 1969 (repealed in 1979). For his crimes, Franklin received a death sentence and two concurrent sentences for life imprisonment. This Court has jurisdiction.[1] The judgment is affirmed.

## I.

In September 1977, Franklin drove to Dallas, Texas, after robbing a bank in Little Rock, Arkansas. While in Dallas, Franklin purchased a 30.06 rifle through a classified advertisement and took the weapon to a firing range to properly adjust his telescopic sight and practice his marksmanship. After spending a week in Dallas, he drove to Oklahoma City, Oklahoma. Franklin had previously bombed a synagogue and another building and had long considered developing a plan to murder numerous Jews as they left synagogue, as he believed that African–Americans and Jews were "enemies of the white race." He ultimately decided not to execute his plan in Oklahoma City, but instead chose St. Louis, which he believed to have a large Jewish community.

In the last week of September or the first week of October, Franklin drove to St. Louis and checked into a hotel under an assumed name. After scouting numerous synagogues, he chose Brith Sholom Kneseth Israel Congregation in Richmond Heights. In preparation for his crime, Franklin purchased some ten-inch nails, a guitar case, and a bicycle. He then rode the bicycle to the synagogue to ensure that it could enable him to swiftly leave the

---

1. Mo. Const. Art. V., Section 10; order of June 16, 1998 (effective July 1, 1998).

scene of the crime. He then hammered two nails into a nearby telephone pole to serve as a gun rest.

Some time before the crime, Franklin ground the serial numbers off the rifle he purchased in Dallas. He thoroughly cleaned the rifle, the ammunition, and the guitar case to remove any fingerprints. At all times thereafter, he used gloves to handle this equipment. He placed the rifle in the guitar case and hid it in some bushes near the synagogue.

On October 8, 1977, Franklin lay in ambush for members of the congregation to emerge. As the guests left the synagogue shortly after 1:00 p.m., Franklin began firing upon them from approximately one hundred yards. Gerald Gordon was shot in the left side of his chest. He later died from his injuries. Both Steven Goldman and William Ash were severely wounded during the shooting. After expending his ammunition, Franklin abandoned the rifle and guitar case in the bushes. He rode the bicycle to his car in a nearby parking lot, hid the bicycle, and fled St. Louis.

The case remained unsolved for a number of years. In 1994, while serving six consecutive life sentences at the federal penitentiary in Marion, Illinois, Franklin contacted an agent from the Federal Bureau of Investigation and requested to speak with him. During an interview with the agent, Franklin confessed to having committed the shooting upon the congregants of Brith Sholom Kneseth Israel Congregation as they departed from worship services on October 8, 1977.

At trial, Franklin presented no evidence. He urged the jury during closing argument to sentence him to death. After some deliberation, the jury returned with Franklin's death sentence. The court then imposed that sentence, along with two concurrent terms of life imprisonment for felonious assault.

At the time of his sentencing, Franklin executed a written waiver of appeal. After his advisory counsel filed a notice of appeal, Franklin sent a letter to this Court dated May 27, 1998, stating, "...I do NOT wish to appeal case No. 79735. Please set an execution date as soon as possible, either in July or August of this year." On June 16, 1998, this Court handed down its opinion. The Court conducted an independent review of Franklin's sentence on proportionality grounds as required by section 565.035.3, RSMo 1994, and held that Franklin's sentence was proper.[2]

On October 9, 1998, Franklin filed a timely *pro se* Rule 29.15 motion. Counsel was appointed and an amended motion was filed on January 29, 1999. The motion court issued its findings of fact and conclusions of law, which overruled Franklin's Rule 29.15 motion without an evidentiary hearing. Franklin appeals that judgment to this Court.

## II.

In his first allegation of error, Franklin asserts that he received ineffective assistance of counsel when his attorney failed to move this Court to stay his direct appeal pending a determination whether Franklin was competent to waive his direct appeal as requested in his letter to this Court. Appellate review of a motion court's decision in a Rule 29.15 proceeding is limited to a determination of whether the findings of fact and conclusions of law made by the motion court are clearly erroneous.[3] The motion court's decision will be considered clearly erroneous if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made.[4]

Rule 29.15(g) requires an evidentiary hearing to be held if one is requested and if the files and records of the case fail

---

**2.** *See State v. Franklin,* 969 S.W.2d 743 (Mo. banc 1998).

**3.** Rule 29.15(j).

**4.** *State v. Schaal,* 806 S.W.2d 659, 667 (Mo. banc 1991).

to conclusively show that the movant is not entitled to relief. A movant is entitled to an evidentiary hearing if (1) he alleges facts that warrant relief, if true; (2) the allegations are not refuted by the record; and (3) the movant was prejudiced by the alleged errors.[5] "With respect to claims related to ineffective assistance of counsel, to obtain an evidentiary hearing, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and that movant was thereby prejudiced."[6]

Two months before his trial, Franklin filed a motion to waive his right to counsel and proceed to trial *pro se*. That day, his attorneys challenged his competency to do so. Judge Robert Campbell conducted a hearing on the issue of Franklin's competency. Franklin was evaluated separately by two psychiatrists, one chosen by the defense, the other chosen by the court.

The psychiatrist chosen by the defense was Dr. Dorothy Lewis. Dr. Lewis testified that while Franklin did understand the proceedings against him and the consequences he may face, he was unable to assist his attorneys in his defense because he suffered from paranoid schizophrenia. She opined that his decision to reject the assistance of his counsel was the result of delusions and hallucinations associated with his schizophrenia.

Dr. S.D. Parwatikar conducted Franklin's pretrial chapter 552 examination for the court. Dr. Parwatikar diagnosed Franklin as suffering from a paranoid personality disorder, but concluded that Franklin had excellent insight into his legal situation, that he was capable of assisting his attorneys if he wished, and that he was competent to proceed. Dr. Parwatikar did note that Franklin exhibited many examples of idiosyncratic thinking. These included his beliefs that Jews were the cause of all evil in the world, that spirit guides spoke to him and guided him in various life decisions, and that the government, media, and film industry in the United States were the "great Satan." These idiosyncrasies, however, did not rise to the level of delusions associated with paranoid schizophrenia affecting Franklin's competency, according to Dr. Parwatikar.

During the competency hearing, Franklin actively opposed his attorneys' efforts to have him declared incompetent to proceed. Upon taking the stand, he admitted to having certain "neuroses" and personality disorders, but refuted the notion that he was schizophrenic. Upon questioning regarding his competence, Franklin accurately described the charges against him, the possible punishments he might receive, and the respective roles of those persons involved in the proceedings. When asked whether he was capable of assisting his attorneys, Franklin described how he informed his attorneys that he did not believe he could be prosecuted for armed criminal action because the statute was enacted after his crime. He was correct and the prosecution dropped the charges.

At the hearing's conclusion, Judge Campbell found Franklin to be competent to proceed. The court noted that it found Dr. Parwatikar's testimony more compelling than that of Dr. Lewis and expressed disbelief in Dr. Lewis' diagnosis that Franklin was delusional. On direct appeal to this Court, Franklin's attorney alleged that the trial court erred when it found Franklin competent to proceed. To support his argument, he argued that the testimony given by Dr. Lewis was more credible than that of Dr. Parwatikar. This Court dismissed that claim following Franklin's letter waiving his appeal.

 In order to prove that he was deprived of the effective assistance of counsel on appeal, Franklin must first show (1) that the actions of his appellate

**5.** *State v. Brooks,* 960 S.W.2d 479, 497 (Mo. banc 1997).

**6.** *Id.*

attorney were "outside the wide range of professionally competent assistance," [7] and (2) that his counsel's errors were so severe that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" [8] and (3) that counsel's deficient performance resulted in prejudice.[9] To support a claim of ineffectiveness regarding an attorney representing the defendant on direct appeal from his conviction, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized and asserted it." [10]

■ The issue of Franklin's competency, and all the relevant evidence he cites to support his contention that he is not competent to proceed, was fully litigated before the trial court. That court found Franklin to be competent. Franklin's attorney on direct appeal raised the issue as a claim of error before this Court. This Court dismissed that issue on direct appeal. The only evidence submitted by Franklin in support of his motion that did not come directly from the trial record is that a spirit guide instructed him to waive his direct appeal. While this particular instruction by a spirit guide may constitute new evidence, Franklin's reliance on spirit guides was well documented in the trial record. The same or similar guides had instructed Franklin at varying times to initially confess to the shootings, to speak to the media, and to seek castration for his sins. Nonetheless, the trial court determined that he was competent to proceed. This Court gives deference to the trial court's determination of a defendant's competence, as the trial court may observe the defendant's behavior first-hand.[11] Previous instructions to Franklin by the spirit guide(s) were found insufficient to cast doubt on his competence. The instruction to waive his direct appeal is no different. As no new evidence has been presented to show that Franklin's mental condition has changed since trial, appellate counsel can not be deemed ineffective for failing to request a reevaluation of Franklin's competency.

### III.

■ Franklin next alleges that his trial counsel erred when counsel refused to present evidence at trial of Franklin's obsessive/compulsive behavior and that his confession to the crime was motivated by threats to his life that he experienced as an inmate at the federal penitentiary in Marion, Illinois. Franklin insists that he would not have waived counsel and proceeded to trial *pro se* if his attorney had agreed to present this evidence.

Franklin's claims of error fail for two reasons. First, his motion to the court failed to allege facts showing that he suffered prejudice. To obtain an evidentiary hearing on claims of ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing (1) that counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney and (2) that the movant was thereby prejudiced.[12] To show prejudice, "the facts alleged must show a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " [13]

---

7. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

8. *Id.* at 687, 104 S.Ct. 2052.

9. *Id.*

10. *Moss v. State,* 10 S.W.3d 508, 514 (Mo. banc 2000).

11. *State v. Hampton*, 959 S.W.2d 444, 449–50 (Mo. banc 1997);

12. *State v. Carter,* 955 S.W.2d 548, 554 (Mo. banc 1997).

13. *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ In his Rule 29.15 motion, Franklin's only claim of prejudice is that he was deprived of his right to counsel. Franklin's mere assertion that he would not have chosen to proceed *pro se* had counsel been willing to present certain evidence does not form the basis of a reasonable assumption that the final outcome of the trial would have been any different. A defendant who proceeds *pro se* is bound by the same rules as a party represented by counsel.[14] Our courts cannot hold *pro se* defendants to a different standard than those represented by counsel.[15]

Second, notwithstanding the procedural flaws in his motion, Franklin fails to allege facts that are not refuted by the record. Throughout his competency hearing, Franklin argued vigorously that he was fully competent to proceed to trial. Throughout trial, Franklin actively sought his own conviction and death sentence. Addressing Dr. Lewis' diagnosis that he suffered from paranoid schizophrenia, Franklin noted that while he had a condition known as obsessive-compulsive disorder, it had no effect on his ability to control his actions and understand their consequences. Explaining his disorder, he said:

> But people with obsessive-compulsive disorder are not psychotic and they're not crazy. It's just an anxiety disorder that affects about 2 percent of the population. And people with it can function just as well as anyone else. The only problems they have are with various obsessions and compulsions that make them want to wash their hands and do other, you know, unnecessary things.

Similarly, the record refutes the notion that death threats while in federal prison motivated Franklin to seek his own death sentence in Missouri. True, Franklin did suggest that that he believed certain individuals at the federal prison in Marion were trying to kill him and that he would prefer being sentenced to death in Missouri than being killed at the federal prison. However, when expressly asked during his competency hearing whether he confessed to the murder of Gerald Gordon in order to get out of the federal prison, he emphatically denied it to be his motivation. As discussed in Part II, Franklin has stated numerous times that his motivation for confessing came not from these death threats, but from a spirit guide who told him to confess and seek his own execution.

## IV.

In his final points on appeal, Franklin alleges that the motion court erred because the findings of fact and conclusions of law entered by that court were fatally flawed. His specific claims include that the court entered inadequate findings regarding his appellate counsel's failure to request a competency hearing regarding his waiver of appeal and trial counsel's failure to present evidence of his obsessive/compulsive behavior and threats to his life while in federal prison.

■ Under Rule 29.15(j), a motion court is required to issue findings of fact and conclusions of law on all issues presented, without regard to whether an evidentiary hearing is held.[16] However, the court is not required to individually address every claim brought by the movant.[17] Generalized findings are sufficient so long as they permit the appellate court an adequate record for appellate review of movant's claims.[18]

■ Franklin's claim of error regarding the findings entered by the motion court is without merit. The motion court

---

14. *State v. Ellis,* 949 S.W.2d 279, 280 (Mo. App.1997).

15. *Id.*

16. *Barry v. State,* 850 S.W.2d 348, 350 (Mo. banc 1993).

17. *State v. Taylor,* 929 S.W.2d 209, 223–24 (Mo. banc 1996).

18. *Id.*

heard evidence and gave very specific findings that it found Dr. Parwatikar's testimony more compelling than that of Dr. Lewis, concluding Franklin to be competent. The court also noted Franklin's shrewdness during questioning by his defense attorneys trying to prove him incompetent against his wishes. Second, while the court did not specifically address the issues regarding his obsessive/compulsive disorder and the threats on his life in federal prison, we find that the court's generalized findings were sufficient to permit adequate appellate review. Furthermore, as discussed in Parts II and III, these claims are without merit and Franklin would not be entitled to relief as a matter of law.[19]

The remainder of Franklin's claims involve a litany of allegations regarding the constitutionality of various aspects of his trial. Postconviction motions cannot be used as a substitute for direct appeal or to obtain further appellate review.[20] Issues capable of being raised on direct appeal – even constitutional issues – may not be raised in postconviction proceedings except where fundamental fairness requires otherwise and only in rare and exceptional circumstances.[21] We find that the trial court did not err where it declined to enter specific findings concerning these claims because they were specifically raised on appeal and Franklin chose to voluntarily request dismissal of that appeal.

For the foregoing reasons, the judgment of the motion court is affirmed.

All concur.

---

**19.** *White v. State,* 939 S.W.2d 887, 903 (Mo. banc 1997) (holding that an appellate court shall not order remand for the motion court to enter more specific findings where the movant is clearly entitled to no relief as a matter of law).

**20.** *State v. Jones,* 979 S.W.2d 171, 181 (Mo. banc 1998).

**21.** *State v. Tolliver,* 839 S.W.2d 296, 298 (Mo. banc 1992).