# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-1043/1047

_____

| | |
|---|---|
| Joseph Franklin, | * |
| | * |
| Appellee/Cross-Appellant, | * |
| | * Appeals from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Al Luebbers, | * |
| | * |
| Appellant/Cross-Appellee. | * |

_____

Submitted: November 13, 2006
Filed: July 24, 2007

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Joseph Franklin (Franklin) applied for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, collaterally attacking his Missouri capital murder conviction and death sentence. The district court granted Franklin's application on two grounds and denied the application on all other grounds. This appeal followed. We reverse.

## I.     BACKGROUND

On October 8, 1977, a sniper fired shots at worshipers exiting a St. Louis synagogue, killing one man and wounding two other men. Police recovered a Remington .30-06 rifle, spent shell casings, a guitar case, and a bicycle used in

connection with the shootings, but never apprehended the sniper. The crimes remained unsolved for seventeen years.

In 1994, while serving six consecutive life sentences at a federal penitentiary in Marion, Illinois, Franklin requested an interview with an agent from the Federal Bureau of Investigation (FBI). During the interview, Franklin confessed to the 1977 St. Louis synagogue shootings. Franklin gave the FBI agent a detailed account of his preparation for and execution of the shootings, which included: (1) buying a .30-06 rifle in Texas, obliterating the rifle's serial numbers, and wiping his fingerprints from the rifle and shell casings; (2) initially choosing Oklahoma City as the location for the shootings, but selecting St. Louis instead, believing St. Louis had a larger Jewish population; (3) choosing the Richmond Heights (St. Louis) synagogue because it had bushes for cover; (4) carrying the rifle in a guitar case to the scene the night before the shootings; (5) hammering nails into a telephone post to use as a rifle prop; (6) using a bicycle to flee the scene undetected after the shootings; and (7) monitoring the police radio to determine whether the police were looking for him. Franklin repeated his confession in a videotaped interview to a Richmond Heights police officer, and told the officer he wished he "had killed five Jews with the five bullets."

Franklin was charged in Missouri state court with capital murder, two counts of assault with intent to do great bodily harm with malice aforethought, and three counts of armed criminal action.[1] Franklin's court-appointed trial counsel filed a notice of intent to rely on the defense of mental disease or defect and also requested a hearing on Franklin's mental fitness to proceed. The trial court ordered Franklin to submit to psychiatric evaluations and held a competency hearing.

The trial court heard testimony from defense psychiatrist Dr. Dorothy Lewis (Dr. Lewis), the state's psychiatrist Dr. Sam Parwatikar (Dr. Parwatikar), and

---

[1]The state ultimately dismissed the three counts of armed criminal action.

Franklin, as well as defense counsel's arguments. Dr. Lewis opined Franklin suffered from paranoid schizophrenia and was not competent to stand trial. Dr. Parwatikar, on the other hand, opined Franklin suffered from idiosyncratic thoughts and found Franklin's behavior to be the result of a personality disorder, rather than a mental disease. Dr. Parwatikar found Franklin was capable of assisting in his defense and competent to stand trial.

Franklin told the trial court he disagreed with Dr. Lewis's diagnosis of paranoid schizophrenia, but admitted suffering from obsessive compulsive disorder, attention deficit disorder, and social phobias. Franklin explained he wanted to be convicted for the St. Louis synagogue shootings because corrections officers at the Marion federal penitentiary were trying to kill him for exposing drug-smuggling activities. Franklin testified he believed in reincarnation and was guided by dreams, numbers, letters, lights, astrology, common sense, and the Bible. Franklin insisted his superstitions did not mean he was "psychotic or completely crazy or stark, raving mad." Franklin said he was instructed in a dream to give his confession, but he was never instructed to confess to a crime he did not commit. As evidence of his ability to assist in his defense, Franklin testified that the state dropped the armed criminal action charges after Franklin correctly advised his attorneys the state could not prosecute him under the armed criminal action statute because his crimes occurred in 1977, two years before the enactment of the statute. After considering the testimonies and arguments, the trial court agreed with Dr. Parwatikar's assessment and found Franklin competent to proceed to trial.

Before trial began, Franklin filed a motion to proceed pro se because he disagreed with his attorneys "in regards to the type of defense we want to use and other issues." Franklin asserted his ability to represent himself noting, "I am experienced in trial law, and although I've never been to law school, I've represented myself in two other murder trials, one of them a capital case." Franklin, however, did request advisory counsel.

At a second competency hearing, the trial court considered factors under Missouri's waiver of counsel statute, see Mo. Rev. Stat. § 600.051, including whether Franklin understood the charges against him and his right to counsel. Based upon Franklin's testimony, as well as evidence presented in conjunction with the competency motion, the trial court found Franklin's waiver of counsel was knowing and voluntary, and granted Franklin's motion to proceed pro se. The trial court denied defense counsel's motion to withdraw and ordered defense counsel to serve as Franklin's advisory counsel. Before trial, Franklin signed and submitted a written waiver of counsel.

At trial, Franklin participated in jury selection, cross-examined the state's witnesses, and called one witness. At the close of the evidence, the state and Franklin made closing arguments and the case was submitted to the jury. The jury convicted Franklin of capital murder and two counts of assault with intent to do great bodily harm with malice aforethought.

In the penalty phase, the state presented evidence of Franklin's prior convictions for the murders of two African-American men in Utah, the murder of an interracial couple in Wisconsin, and the bombing of a synagogue in Tennessee. During closing statements, the state prosecutor asserted Franklin's plan to kill more than one person during the sniper attack "exhibited a callous disregard for the sanctity of human life," and "the aggravating circumstances of th[e] case justif[ied] the imposition of the sentence of death." In his own brief closing statement, Franklin relayed a fellow inmate's suggestion that if the jury did not recommend the death penalty, Franklin "should kill somebody to make sure they do the next time." Franklin told the jurors, he thereafter "decided that if you guys do not vote for the death penalty, that's what's going to happen. I'm already doing six consecutive life sentences already, plus some other time. And it would just be a total farce if you guys did not sentence me to death."

The jury recommended the death penalty for the murder conviction and two terms of life imprisonment for each assault conviction. At the close of the penalty phase, Franklin's advisory counsel made a record of claimed errors and told the trial court they intended to file a motion for new trial. Franklin objected to his advisory counsel filing a motion for new trial, insisting he did not want a new trial, and asking the trial court to "take [advisory counsel] off the case so that [advisory counsel] cannot try to file an appeal of this case." After verifying Franklin's intentions, the trial court overruled advisory counsel's motion for a new trial.

The trial court sentenced Franklin to death by lethal injection for the capital murder conviction and to concurrent life sentences for the two assault convictions. The trial court advised Franklin of his right to appeal, but Franklin again declared he did not want to appeal. The trial court read aloud and Franklin signed and submitted a waiver of appeal. Despite Franklin's repeated statements before, during, and after trial expressing his wish not to appeal,[2] Franklin's advisory counsel presented Franklin with an authorization to file an appeal, which Franklin refused to sign. Franklin's advisory counsel nonetheless filed the unauthorized notice of appeal.

On May 1, 1998, after receiving Franklin's *waiver* of appeal and advisory counsel's *notice* of appeal, the Missouri Supreme Court ordered Franklin to submit in writing his intention regarding an appeal on issues other than the statutory review

---

[2]During Franklin's pretrial competency hearing, Franklin testified that, if convicted, he did not intend to appeal and did not want any conviction and death sentence overturned. Franklin's counsel acknowledged that Franklin had the right not to appeal. (Counsel: "[Franklin] indicated that he wants the death sentence. He doesn't even want to appeal." Court: "He has a right to not appeal, does he not?" Counsel: "Yes, he does."). After the reading of the jury's guilty verdicts, Franklin smiled, gave the jury the "thumbs up" sign, and said, "Right on." When Franklin's sentence was pronounced, Franklin asked the trial court to remove his advisory counsel from the case "so that she cannot try to file an appeal of this case." Franklin also asked the trial court to set his execution date.

of his death sentence. The Missouri Supreme Court received a letter from Franklin on May 27, 1998, advising "the court [he did] NOT wish to appeal" his case and to "[p]lease set an execution date as soon as possible." The Missouri Supreme Court treated Franklin's letter as a response to the May 1, 1998, order and dismissed Franklin's appeal. See State v. Franklin (Franklin I), 969 S.W.2d 743, 744 (Mo. 1998) (en banc). The Missouri Supreme Court performed the mandatory proportionality review of Franklin's sentence, see Mo. Rev. Stat. § 565.014 (repealed 1983, current version at Mo. Rev. Stat. § 565.035), and concluded "Franklin's punishment [was] neither excessive nor disproportionate in light of the crime and the strength of the evidence against him." Franklin I, 969 S.W.2d at 746. Two months later, Franklin moved to file an out-of-time appeal authorization, stating he had "changed his mind" and now wished to appeal. The Missouri Supreme Court denied Franklin's motion as untimely.

Thereafter, Franklin filed a pro se motion for post-conviction relief asserting several claims of error, including allegations of ineffective assistance of appellate counsel and constitutional violations during trial. See State v. Franklin (Franklin P.C.), 24 S.W.3d 686, 689 (Mo. 2000) (en banc), cert. denied, 531 U.S. 951 (2000). The motion court overruled the motion without an evidentiary hearing. The Missouri Supreme Court affirmed the denial of post-conviction relief, finding (1) the appellate counsel's failure to request a reevaluation of Franklin's competency did not render appellate counsel's assistance ineffective because Franklin's competence was fully litigated before the trial court and Franklin presented no new evidence to cast doubt on his continued competence, and (2) Franklin had not shown a reasonable probability the result of the proceeding would have been any different, and therefore failed to demonstrate prejudice. See id. at 690-93. The Missouri Supreme Court declined to consider Franklin's various constitutional challenges, concluding:

> Postconviction motions cannot be used as a substitute for direct appeal
> or to obtain further appellate review. Issues capable of being raised on

-6-

direct appeal–even constitutional issues–may not be raised in postconviction proceedings except where fundamental fairness requires otherwise and only in rare and exceptional circumstances. We find that the trial court did not err where it declined to enter specific findings concerning these claims because they were specifically raised on appeal and Franklin chose to voluntarily request dismissal of that appeal.

Id. at 693 (footnotes and internal citations omitted).

Franklin then applied for a federal writ of habeas corpus, asserting sixteen grounds for relief. The state argued Franklin's claims were procedurally barred because Franklin waived his direct appeal. The district court held Franklin's claims were not procedurally barred because (1) there was "no basis in the record to conclude that the Missouri Supreme Court found the waiver to be valid and binding"; (2) the Missouri Supreme Court's reliance on Franklin's May 27 letter did not constitute the enforcement of a state procedural rule because the process engaged in fell "entirely outside the usual procedures"; and (3) there is "no rule that authorizes represented appellants to bypass counsel and communicate directly with the court regarding outcome-determinative matters."

The district court, however, rejected Franklin's claim that the trial court erred in determining Franklin was competent, concluding Franklin had not overcome by clear and convincing evidence the presumption of correctness afforded the state court's competence determination under § 2254(e)(1). See Demosthenes v. Baal, 495 U.S. 731, 735 (1990) (per curiam) (concluding a state court's conclusion regarding a defendant's competence is a factual determination entitled to a presumption of correctness); Lyon v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005) ("Because competence to stand trial is a factual issue, we presume the state court's finding of competence is correct." (internal citation omitted)). The district court also rejected Franklin's claim that the Missouri Supreme Court erred in determining Franklin was competent to waive his direct appeal, finding the only new evidence calling Franklin's

previously determined competence into question was Franklin's refusal to sign the appeal authorization based on his interpretation of a dream. The district court concluded this conduct was consistent with Franklin's conduct throughout his criminal proceeding, and therefore there was no good reason to doubt the continued correctness of the trial court's competence determination. See Garrett v. Groose, 99 F.3d 283, 286 (8th Cir. 1996) ("[A] finding of competence, once made, continues to be presumptively correct until some good reason to doubt it is presented.").

The district court similarly rejected Franklin's claim that the Missouri Supreme Court interfered with Franklin's right to counsel in relying on Franklin's May 27, 1998, letter as stating Franklin's intentions regarding an appeal. The district court concluded Franklin had no Sixth Amendment right to counsel on appeal, see Martinez v. Court of Appeal of Cal., 528 U.S. 152, 160 (2000), and furthermore, Franklin's appointed counsel received notice of the Missouri Supreme Court's intention to use the May 27 letter as a response, but did not further challenge that ruling.

The district court granted Franklin relief on two grounds: Franklin's waiver of counsel was not knowing, voluntary, and intelligent, and the trial court erred in failing to give a penalty phase jury instruction. The state appeals, arguing the district court erred in finding Franklin's claims were not procedurally defaulted, and alternatively, relief is not warranted by the record. Franklin cross-appeals the district court's denial of relief on his claims that he was not competent to stand trial, his waiver of appeal was invalid, and the trial court interfered with his right to counsel on appeal.

## II. DISCUSSION

"On appeal of a denial of habeas corpus, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo." Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007). When a state prisoner applies for a writ of habeas corpus, our review is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, which directs us

"to undertake only a limited and deferential review of the underlying state court decisions." Morales v. Ault, 476 F.3d 545, 549 (8th Cir. 2007) (internal quotation marks omitted), petition for cert. filed (U.S. June 15, 2007) (No. 06-11912).

However, we will not review an applicant's federal habeas application and "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The "independent and adequate state ground doctrine is jurisdictional," and applies whether the state law ground is procedural or substantive. Id. at 729. Thus, the doctrine bars federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 729-30. The state procedural ground is not adequate unless it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quotation omitted); see also White v. Bowersox, 206 F.3d 776, 780 (8th Cir. 2000) ("Procedural default of a claim under state law may constitute an independent and adequate state ground, but only if the state procedural rule is firmly established, regularly followed, and readily ascertainable." (internal citation omitted)).

The state argues Franklin's claims are procedurally barred on habeas review because Franklin waived his direct appeal. Franklin notes the procedural default argument would apply to all his habeas claims, but insists no procedural default occurred. Franklin argues "the Missouri Supreme Court created a procedural rule that is nowhere written in the laws and had never before been in place," and therefore the dismissal of his direct appeal was not based on "independent and adequate state grounds." We disagree with Franklin's position.

The pivotal question is Franklin's competence. As the district court found, under § 2254(e)(1), the state court's competence determination is presumptively correct, and Franklin failed to overcome that presumption by clear and convincing

evidence.  See Demosthenes, 495 U.S. at 735.  We also agree with the district court that Franklin presented no new evidence to cast doubt on his continued competence when he waived his appeal.  At this point, however, we part company with the district court's findings.

First, Franklin's advisory counsel, not the Missouri Supreme Court, pursued a misleading and possibly improper procedure.  Advisory counsel injected confusion by filing an unauthorized notice of appeal after Franklin signed a waiver of appeal.  Thus, it was Franklin's desire *not* to appeal that was clouded by advisory counsel filing an unauthorized notice of appeal.  The Missouri Supreme Court could have rejected summarily the notice filed by advisory counsel on behalf of Franklin, who was self-represented and refused to authorize the notice of appeal.  However, in an abundance of caution, the Missouri Supreme Court ordered Franklin to submit his written authorization if he wished to appeal.  See Franklin I, 969 S.W.2d at 744.  Franklin refused to sign the authorization and instead sent the May 27 letter to the Missouri Supreme Court, which stated,

> I am a Missouri prisoner under sentence of death, and am currently on "writ of habeus [sic] corpus ad testificandum."  This is to advise the court that I do NOT wish to appeal case No. 79735.  Please set an execution date as soon as possible, either in July or August of this year.

The Missouri Supreme Court concluded Franklin "unequivocally" did not wish to appeal his case, and the court dismissed the appeal.  Id.

As Franklin admits, the Missouri Supreme Court had no obligation to issue the May 1 order requesting Franklin's written response regarding his intention to appeal.  Instead, Franklin faults the Missouri Supreme Court for requesting clarification of the record.  Contrary to Franklin's argument and the district court's findings, the Missouri Supreme Court's request for clarification was not an act "entirely outside the usual procedures."  Rather, the request fell precisely within the scope of the Missouri

-10-

Supreme Court's procedural rules, which authorize appellate courts to order the parties to correct errors or omissions in the record. See Mo. Sup. Ct. R. 81.12(f) ("If anything material is omitted from the record on appeal, . . . the appellate court, on a proper suggestion or *of its own initiative*, shall direct that the omission or misstatement be corrected. The appellate court may, if it deems necessary, order that a supplemental record on appeal be prepared." (emphasis added)). The Missouri Supreme Court's action was cautious and proper procedure, not remotely unconstitutional or unfair.

Similarly, the district court's finding that the Missouri Supreme Court did not consider Franklin's waiver of appeal to be valid and binding is undercut by the Missouri Supreme Court later rejecting claims raised by Franklin in his post-conviction relief motion, which could have been raised on direct appeal. See Franklin P.C., 24 S.W.3d at 693 ("Postconviction motions cannot be used as a substitute for direct appeal or to obtain further appellate review." (citing State v. Jones, 979 S.W.2d 171, 181 (Mo. 1998) (en banc))). The Missouri Supreme Court's rejection of Franklin's federal claims, due to Franklin voluntarily dismissing his direct appeal, procedurally bars those claims from federal habeas review under the independent and adequate state ground doctrine. See Coleman, 501 U.S. at 730-31 (holding the doctrine, rooted in principles of comity and federalism, prevents state prisoners, whose custody is supported by independent and adequate state grounds, from making an end run around the limits of federal jurisdiction by seeking on federal habeas review to do what the United States Supreme Court could not do on direct review).[3]

We conclude Franklin's voluntary waiver of his direct appeal resulted in procedural default and bars review of all of Franklin's claims raised in this appeal of

---

[3]Franklin does not attempt to establish cause and prejudice or actual innocence to excuse his procedural default nor do we perceive a basis for such a conclusion.

his federal habeas application.[4] See id. at 729-30.  The district court, therefore, was without jurisdiction to grant relief on Franklin's claims challenging the voluntariness of Franklin's waiver of trial counsel and the trial court's omission of penalty-phase jury instructions.  Because the claims raised in Franklin's cross-appeal also are procedurally barred, we need not address Franklin's arguments.

## III.   CONCLUSION

For the foregoing reasons, we reverse the district court's judgment granting in part Franklin's application for habeas relief.  We remand with directions for the district court to dismiss Franklin's habeas application in total.

_____

---

[4]Franklin's ineffective assistance of appellate counsel claim and his claim challenging the constitutionality of the Missouri Supreme Court's proportionality review were not raised in this appeal and are not addressed in this opinion.

-12-