Shawna J. CLARK, Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 24846.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 22, 2003.

Nancy A. McKerrow, Assistant State
Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Anne E. Edgington, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Shawna J. Clark ("Movant") was charged with one count of conspiracy to commit murder in the first degree, a violation of Section 546.016,[1] and one count of unlawful use of a weapon, a violation of Section 571.030. Following a trial by jury, Movant was found guilty on both counts and sentenced, per the jury's recommendation, to concurrent terms of fifteen years imprisonment for conspiracy and five years imprisonment for unlawful use of a weapon. This court affirmed the convictions and sentence. *State v. Clark*, 26 S.W.3d 448 (Mo.App. S.D.2000).[2]

The underlying facts of this case are as follows: In 1997, Michael Murphy ("Murphy"), a Springfield, Missouri police officer, was assigned to the Combined Ozarks Multi-jurisdictional Enforcement Team ("COMET") as a narcotics investigator, performing primarily undercover work. On June 3, 1997, Murphy and "Corky" Alsip ("Alsip") were at Movant's apartment in Hollister, Missouri, where Murphy bought a quarter pound of marijuana from Movant. On July 24, 1997, at the same apartment, Murphy made another marijuana buy from Movant.

Around the first week of August 1997, Murphy began using the services of a confidential informant, Deborah Christian ("Christian"), an acquaintance of Movant. Murphy wanted to make a third purchase from Movant so, at Murphy's request, Christian set up a "buy" for September 11, 1997.

Late that evening, Christian, Murphy, Movant and another undercover officer-"Toby"-drove to the residence of Barry Dean Davis in Reeds Spring, Missouri. There, Murphy gave Movant $2000. She entered the residence, then returned a few minutes later with a pound of marijuana. She tossed it to Murphy and said "they had five more pounds" if he was interested. Toby, Murphy and Christian thereafter took Movant to a hotel resort in Branson, Missouri and dropped her off.

The following day, COMET officers executed a search warrant at Barry Dean Davis's residence and seized approximately "nine pounds of marijuana," after which Davis was arrested. About 8:00 P.M., Movant telephoned Christian, telling her that "Davis had been busted," that Murphy "was a cop," and that she "wanted to know where he was at and where she could find him at." Movant explained that Davis's arrest had been blamed on her and if she went down, she "wasn't going down alone." According to Christian, Movant's "exact words" were: "I mean what I said. I want [Murphy] dead. And I will put a bullet in his head." Movant asked Christian to find Murphy and "bring him to her." She also supplied Christian with a pager number by which she could be contacted. Christian notified Murphy about Movant's comments and request.

At 1:06 A.M., September 13, 1997—some five hours after Movant's initial call—Movant called Christian again, asking whether she had found Murphy. Christian replied that "we were working on it." Christian recalled Movant saying: "I want Murphy found and found now. This involves family. I have to answer to my father, and when I do, blood's going to flow. I don't plan on being there by myself. Bush Clark always said, 'loose lips, sink ships.' ... Just find him and bring him to me. I want to see him die and die slow."

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

2. Portions of our opinion on direct appeal are incorporated herein without further attribution.

At 3:14 A.M., Movant called Christian again. Christian told her some friends were watching Murphy's residence. Movant admonished Christian: "Don't let him get away.... I need him." After that call, Christian turned off her telephone but left her answering machine on. Movant continued calling, leaving "message after message" on the machine.

About 6:30 P.M. that day, Murphy and Sergeant Timothy J. Roussett of the Missouri State Highway Patrol ("Roussett") met Christian in Ozark, Missouri. Roussett developed a plan to arrest Movant, selecting the nightclub "Guitars & Cadillacs" in Branson as the arrest site.

Murphy supplied Christian a cellular phone equipped with a tape recorder. Christian contacted Movant and told her she had found Murphy and would "have him in about [thirty] minutes." Movant said, "Let me call you back."

Christian, Murphy and Roussett drove from Ozark to Guitars & Cadillacs. Christian and Murphy waited in Murphy's vehicle on the Guitars & Cadillacs parking lot, while Roussett waited in another vehicle.

Christian received a call from Movant, who told her to bring Murphy to a low water bridge on Railey Creek. Christian told Movant, "I'll try and find it." However, adhering to the plan, Christian, Murphy and Roussett remained at Guitars & Cadillacs.

Christian later received a call from Jason Hamann ("Hamann"). He said he was calling for Movant, who was waiting for her. Christian told Hamann she was in Branson and needed Movant to call her. When Movant did call, Christian told her "we ran into a problem," that Murphy was at Guitars & Cadillacs, and that "Ty" was "pourin' liquor down him." Movant told Christian to keep him there, that she was on her way.

Some time later, a white Camaro entered the parking lot of Guitars & Cadillacs. Movant was seated on the passenger side. She went into Guitars & Cadillacs, and called Christian, evidently from a pay phone. Movant asked Christian where she was, and Christian told her she was at the "Amoco Station ... right next door" buying cigarettes and Murphy was "about to puke" on her. Movant replied: "I'm going out the door. I'll see you in a minute."

Murphy saw Movant leave Guitars & Cadillacs and walk "very briskly toward the Amoco parking lot." As she reached the Amoco building, Roussett arrested her. Roussett asked Movant whether she was armed; she said she was. Then, according to Roussett, "she raised her shirt and the gun was inside her shorts underneath her shirt." The Branson police department seized the gun, a .25 caliber semiautomatic handgun. It was loaded and a round was in the chamber. After arresting Movant, Roussett arrested Hamann outside Guitars & Cadillacs. Hamann was carrying a .380 semi-automatic pistol.

Movant now appeals from the motion court's denial, following an evidentiary hearing, of her Rule 29.15[3] motion for post-conviction relief. She makes two assignments of error. First, Movant alleges it was clear error for the motion court to deny her motion because she was denied effective assistance of counsel, in that her trial counsel failed to move the trial court to strike for cause an eventual juror from the jury panel during voir dire. Second, Movant alleges that she received ineffec-

---

**3.** References to rules are to Missouri Rules of Criminal Procedure (2002) unless otherwise indicated.

tive assistance of counsel, in that her trial counsel failed to introduce "readily available" evidence in support of her motion to suppress the testimony of a federal law enforcement agent to whom Movant made inculpatory statements.

Our review of the denial of a Rule 29.15 motion is limited to a determination whether the findings and conclusions of the motion court are clearly erroneous. *Kates v. State*, 79 S.W.3d 922, 924 (Mo.App. S.D.2002). Those findings and conclusions are clearly erroneous only if, after a thorough review of the record, we are left with the definite and firm impression that a mistake has been made. *Id.* (citing *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990)).

The standard for prevailing in a claim of ineffective assistance of counsel is a showing by the movant that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that she was prejudiced thereby. *Kates* at 924 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052. The movant bears the burden of proof to show, by a preponderance of the evidence, that ineffective assistance of counsel was rendered. Rule 29.15(i); *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996), *cert. denied*, 519 U.S. 1094, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997).

In her first point, Movant alleges the motion court clearly erred in denying her Rule 29.15 motion "because [she] was denied effective assistance of counsel and due process ... in that trial counsel failed to act as a reasonably competent attorney under the same or similar circumstances when he failed to move to strike venireman E.J. Fowler from the jury panel." Movant further alleges that Movant "was prejudiced by counsel's failure to strike Fowler because [Movant] then had on her jury a juror who had informed counsel that he would not believe the testimony of a drug user, and [Movant] admitted during her testimony that she was a drug user."

During Movant's voir dire, the following exchange occurred:

Q: Do you believe people act in their right mind when they're under the influence of drugs?

VENIREMAN HENRY: No, I do not.

THE COURT: Mr. Back, you have a hand over there.

Q: Okay, I'm sorry. Mr. Fowler?

VENIREMAN FOWLER: Yes, sir. I've been a schoolteacher for several years and I've had dealings with drugs. And I can't honestly say whether it would affect my decision or not.

Q: So, you're high school? What is that—

VENIREMAN FOWLER: No, I was element—well, both.

Q: And, you're saying that wouldn't cause you—

VENIREMAN FOWLER: No, I'm not sure whether that would influence me or not. Because, I've had dealings with students usin' drugs, and I know what it can do. So, I don't—it might affect me.

Q: In which way? How would it affect you? Would you—

VENIREMAN FOWLER: Well, it might be that I wouldn't agree with the person taking the drugs.

Q: Wouldn't believe what they were saying?

VENIREMAN FOWLER: No.

Q: Thank you, Mr. Fowler. Anybody agrees with Mr. Fowler, said they wouldn't be able to believe a witness if they found out they were using· drugs?

Four prospective jurors expressed agreement with the sentiments of Fowler and all four were struck for cause, one specifically for expressing her inability to believe the testimony of a drug user. Movant's counsel did not, however, challenge Fowler, and he served on Movant's jury. In her Rule 29.15 motion, Movant argued that a reasonably competent attorney would have moved the court to strike Fowler for cause based upon his statements concerning drug use.

An evidentiary hearing was held on December 21, 2001 and Movant's trial counsel testified as follows:

Q: In light of striking Barbara Smith and other jurors who responded similarly, do you recall any reason that you wanted to keep E.J. Fowler on this jury?

A: I can't recall any specific reason why we didn't.

Q: And there's nothing reflected in your notes, or that comes back to memory as to why you would have wanted him on that jury?

A: No.

. . . .

Q: Was the fact that you didn't move to strike E.J. Fowler on the same basis that you moved to strike Barbara Smith the result of some strategy, or is it the result of oversight?

A: I can't recall. Again, I can just tell you that when we go to—Well, the first process is strikes for cause, and I can't tell you why I didn't move to strike E.J. Fowler for cause.

Q: You just don't have any recollection at this point?

A: I don't.

Q: And you don't recollect any—any kind of strategic reason for wanting him to remain on the jury?

A: No specific reasons, but—but the process that I do with regards to peremptory strikes is to go down the list with the second chair and the Defendant: Do you like this person, do you not like them? And sometimes it comes to there's somebody else that we didn't like and, as a concession, keep someone one [sic] to strike the other person. But in this case, I can't recall specifically why we didn't move to strike Mr. Fowler for cause or why we kept him on after the peremptories.

On March 1, 2002, in denying Movant's Rule 29.15 motion, the motion court found as follows:

The court finds that the Movant is engaging in an incorrect analysis of the statements of Juror Fowler. He said that the evidence of drugs "might" affect him. His statements were ambiguous. At no time did Juror Fowler express bias against [Movant] and his statements do not show opinions or beliefs so strong as to preclude him from following the instructions of law of the court. Section 494.470.2 RSMo; *State v. Vivone,* 857 SW2d [sic] 489, 497 (MoApp. S.D.1993). Trial counsel testified at the motion hearing on December 21, 2001, that he was sure that Juror Fowler and his voir dire responses were discussed by the defense during the jury selection process and that a decision was made to leave him on the jury though he could not remember specifically why that decision was made. From the record presented, the court concludes that trial counsel's failure to strike E.J. Fowler as

a juror was trial strategy and did not deviate from the customary skill or diligence of a reasonably competent attorney. *State v. Vivone, Id.*

The findings and conclusion of the motion court are not clearly erroneous. Movant was unable to prove at the evidentiary hearing, by a preponderance of the evidence, that Movant's trial counsel was ineffective for failing to remove Fowler from the panel, in that she was unable to prove the decision was not one of reasonable trial strategy. The decision whether or not to challenge a juror is a matter of reasonable trial strategy. *Tripp v. State,* 958 S.W.2d 108, 111 (Mo.App. S.D.1998); *State v. Sonka,* 893 S.W.2d 388, 389 (Mo.App. S.D. 1995). Reasonable trial strategy is not subject to a claim of ineffective assistance of counsel. *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992). In considering the performance of trial counsel, this court must refrain from second guessing decisions of trial strategy. *Strickland* at 689, 104 S.Ct. 2052. Moreover,

> [t]he reasons lawyers prefer one juror over another can involve subtle fleeting impressions. During jury selection, lawyers can observe a large number of jurors ... over a relatively short time, and form the impressions that will determine which ones they challenge. While the jurors selected for trial remain under the lawyer's scrutiny throughout the trial, those challenged disappear from view after only a brief observation. Lawyers, excepting those possessing remarkable capacity for memory, are unlikely to remember the challenged jurors or the decision to challenge for very long.

*Carter v. Hopkins,* 151 F.3d 872, 875 (8th Cir.1998) (quoting *McCrory v. Henderson,* 82 F.3d 1243, 1251 (2nd Cir.1996)). Where, as here, a movant's trial counsel does not remember the reasons for making a strategic decision, there is a failure to overcome the "strong presumption" that the decision was made as part of a reasonable trial strategy and the movant fails to meet the burden to demonstrate that the challenged actions were outside the scope of professionally competent assistance. *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002); *Fretwell v. Norris,* 133 F.3d 621, 627 (8th Cir.1998).

Movant has failed to meet this burden, thereby failing to satisfy the first prong of the two-pronged test delineated in *Strickland* and its progeny, namely, that a movant must show both deficient performance and prejudice. *See Strickland* at 687, 104 S.Ct. 2052. "Courts are not required to consider both prongs of the test; if a movant fails to satisfy one of them, [this] court need not consider the other." *Perry v. State,* 11 S.W.3d 854, 862 (Mo.App. S.D. 2000) (Garrison, C.J., concurring) (citing *State v. Clements,* 849 S.W.2d 640, 646 (Mo.App. S.D.1993)). Having determined Movant did not prove, by a preponderance of the evidence, that she received ineffective assistance of counsel as alleged in her first point, we need not consider whether she was prejudiced. Movant's first point is denied.

■ In her second point, Movant alleges that the motion court clearly erred in denying her Rule 29.15 motion because Movant was "denied effective assistance of counsel and due process ... in that trial counsel failed to act as a reasonably competent attorney under the same or similar circumstances when he failed to introduce readily available evidence in support of [Movant's] motion to suppress her statements to Agent Joy Branch." Movant alleges she was "prejudiced by counsel's failure to introduce that evidence because had he done so, the motion to suppress would have been granted, or if it had been denied, that ruling would have been reversed on appeal since the statement was taken in

violation of [Movant's] Sixth ... Amendment[ ] right to counsel."

On October 1, 1997, Special Agent Joy Branch of the Bureau of Alcohol, Tobacco and Firearms ("Branch") interviewed Movant in the Branson jail. This interview took place seventeen days after the prosecutor filed a complaint against Movant and sixteen days after she was arraigned on that charge. Ten days after that arraignment, on September 25, 1997, an entry of appearance was made on Movant's behalf by an assistant public defender, who made a motion to reduce bond, argued the motion at a hearing held September 29, 1997, and succeeded in getting Movant's bond reduced.

At the outset of Branch's interview of Movant, Movant was advised, by way of a printed form, of her *Miranda* rights. Movant signed the form, indicating she understood those rights, and proceeded to tell Branch about, *inter alia,* her "arrangement" with Christian concerning Officer Murphy.

Prior to trial, Movant's trial counsel moved the trial court to suppress Branch's testimony. The trial court overruled the objection. Before Branch was sworn as a witness, Movant's counsel made the following objection:

[MOVANT'S COUNSEL]: Judge, at this time I would again move to suppress any testimony of this witness, [Branch]. It's my belief that they're going to offer evidence that [Movant] made statements, ah, while incarcerated at the Branson Police Jail nine days after the initiation of judicial proceedings were in effect against her by Associate Court of Taney. The Complaint alleging the same facts and the same events that was questioned by [Branch]. At this time, I think that any conversations are—should not be admitted due to the Sixth Amendment right to counsel

that attaches automatically any time formal initiated [sic] judicial proceedings have been enacted against a defendant, and that a waiver, albeit signed is not—does not do away with the Sixth Amendment right.

The trial court again denied counsel's request to suppress Branch's testimony, and Branch testified to the contents of her interview of Movant.

On direct appeal of Movant's convictions, Movant argued, on Sixth Amendment grounds, that it was error to admit Branch's testimony. In support of her argument, Movant engaged in an extended discussion of such cases as *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), and *State v. Reese,* 795 S.W.2d 69 (Mo. banc 1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991). The facts and holdings of these cases were discussed by this court in its opinion affirming Movant's conviction. 26 S.W.3d at 453–55. We need not repeat that summary here, for the reasons delineated below.

Movant argued on direct appeal that several docket sheet entries demonstrate that, prior to her interview with Branch, Movant's Sixth Amendment right to counsel had attached, by way of her first appearance in associate circuit court, and that she had asserted that right, as evidenced by her being represented by an assistant public defender. Relying upon *Jackson,* and seeking to distinguish *Patterson* and *Reese* from the facts of this case, Movant sought to convince this court that it was reversible error for the trial court to have allowed Branch to testify about her interview with Movant.

We reserved judgment on the notion that the docket sheets demonstrated that

Branch violated Movant's Sixth Amendment right to counsel, because we found that the docket sheets were not presented to the trial court by Movant's counsel, Movant did not testify in support of her motion to suppress, and Movant's counsel made factually erroneous statements to the court that would have eliminated the probative value of the docket sheets. 26 S.W.3d at 456–57.

Here, Movant alleges that the motion court erred in not finding that she received ineffective assistance of counsel because, if trial counsel had introduced the evidence, alluded to by this court on direct appeal, that Movant was represented by counsel at the time of Branch's interview, her motion to suppress Branch's testimony would have been granted or, alternatively, this court would have reversed the case on direct appeal.

Following an evidentiary hearing, the motion court made the following findings:

(b) Movant alleges ineffective assistance of counsel in failing to present evidence in support of movant's motion to suppress statements [sic] [Branch] and properly object to said statements at trial. The court finds that Alcohol, Tobacco and Firearms Agent [Branch] went to the Branson Jail on October 1, 1997 and interviewed Movant without counsel present. The court further finds that the interrogation occurred after Movant's arraignment and the appointment of an assistance [sic] public defender to represent her. Movant's trial counsel made a motion to suppress the testimony of [Branch] or the statements made to [Branch] by the Movant on the first morning of the trial and that was denied or overruled by the Court. Trial counsel renewed his motion to suppress at trial and that was overruled. Trial counsel objected to [Branch's] testimony as that unfolded and all objections were overruled. The court further finds that at no time did the Movant unequivocally assert her right to counsel when interviewed by [Branch], that she was Mirandized by [Branch] prior to the interrogation and that she executed a Waiver of Rights form at the request of [Branch] prior to her interrogation. The court further finds that the Movant, after being advised of her rights including the right to counsel, knowingly and intelligently waived that right and chose to proceed with the interrogation by [Branch]. The court finds no reason why her statements to [Branch] should have been excluded at her trial under [Patterson] and [Reese]. Movant did not seek to deal with the authorities through counsel and knowingly and intelligently made statements to [Branch] and the court concludes that those statements were admissible at Movant's trial and admitting them under the facts in Movant's case was not violative of her Sixth Amendment right to counsel. Movant did not receive ineffective assistance of counsel by virtue of trial counsel's failed effort to keep statements that were admissible out of evidence.

Movant argues these findings, coupled with the motion court's comment in open court that it believed it to be "irrelevant whether it was [nine] or [seventeen] days [between Movant's arraignment and Branch's interview][ ] I knew that the public defender had entered the case when the statement was given," constitute clear error in that they show the court "completely overlooked [Jackson] and misinterpreted [Reese]" in holding that Movant's Sixth

Amendment right to counsel was waived by her signing the *Miranda* waiver form.

Assuming, without deciding, that Movant is correct in stating that her Sixth Amendment right to counsel attached at her arraignment, that she asserted that right by virtue of being represented by counsel at a bond hearing, and that she, therefore, could not validly waive her Sixth Amendment rights by signing Branch's waiver form per the holding in *Jackson*, Movant's second point still must fail. We need not decide whether Movant's counsel was ineffective in not presenting evidence to support the motion to suppress, or whether to overrule the objection in the face of that evidence would have constituted reversible error, because Movant has failed to prove by a preponderance of the evidence that she was prejudiced by trial counsel's alleged errors. *Strickland* at 687, 104 S.Ct. 2052; *Kates* at 924. As we have noted, we are not required to consider both prongs of the *Strickland* test if a movant fails to satisfy one of them. *Clements* at 646. Moreover, "[i]f it is easier to dispose of an ineffective assistance of counsel claim on the ground there was not sufficient prejudice, a court should follow that course." *Floyd v. State*, 77 S.W.3d 98, 101 (Mo.App. S.D.2002) (citing *Sidebottom v. State*, 781 S.W.2d 791, 796 (Mo. banc 1989)).

Had Movant's statements to Branch been suppressed at trial, there would have remained ample evidence from which the jury could have returned verdicts of guilty. Representative of this evidence was Christian's testimony that, following the arrest of Barry Dean Davis, Movant called Christian to tell her she believed Murphy "was a cop" and that she "wanted to know where he was at" so she could "put a bullet in his head." According to Christian, Movant asked her to "bring [Murphy] to her" and supplied a pager number whereby Christian could contact her with Murphy's whereabouts. Christian recalled Movant saying: "I want Murphy found and found now. This involves family. I have to answer to my father, and when I do, blood's going to flow. I don't plan on being there by myself. Bush Clark always said, 'loose lips, sink ships.' ... Just find him and bring him to me. I want to see him die and die slow." Additionally, Movant was tape-recorded setting up with Christian what clearly appeared to be an ambush of Murphy at a remote location in Taney County. She was arrested as she made her way deliberately across a parking lot, with a loaded handgun, to the gas station where Christian told her Murphy was located.

In sum, given the weight of the evidence against Movant, we cannot find that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694, 104 S.Ct. 2052. Therefore, Movant was not prejudiced by what she claims were unprofessional errors made by trial counsel in arguing Movant's motion to suppress, and we need not determine whether those claims have merit. Movant's second point is denied.

The judgment of the motion court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.