Jackson NEELY, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 25274.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 23, 2003.

**733**

Amy M. Bartholow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, John M. Morris, III, Office of Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Jackson Neely ("Movant") seeks post-conviction relief via a Rule 29.15 motion after he was convicted by a jury of murder in the first degree in violation of section 565.020, RSMo (1994).[1] Movant alleges: (1) his trial counsel was ineffective for failing to rehabilitate a witness by use of a prior consistent statement, and (2) his appellate counsel was ineffective for failing to assert a claim of plain error on appeal regarding Movant's invocation of his right to remain silent. Following an evidentiary hearing, the motion court denied Movant's requested post-conviction relief. Movant appeals the motion court's judgment denying relief. We affirm.

### RELEVANT FACTS

The underlying facts of this case can be found in Movant's direct appeal to this court in *State v. Neely,* 979 S.W.2d 552 (Mo.App.1998). We need not repeat all of those facts here; suffice it to say, the evidence was sufficient to convict Movant

of first-degree murder for the shooting death of Terri Bell ("Victim") on January 14, 1995. The following recitation of facts are those relevant to our decision in Movant's post-conviction appeal.

In part, the evidence presented at Movant's criminal trial consisted of two statements made by witness Gary Goldsmith to police officers on April 5, 1995, and the testimony of Goldsmith at Movant's preliminary hearing on January 8, 1996. Goldsmith's preliminary hearing testimony was used at Movant's criminal trial (held February 10–15, 1997) because Goldsmith died May 2, 1996.

Goldsmith's first statement to the police on April 5, 1995, which the jury heard, was in the form of a confession, i.e., that he killed Victim. Even so, the police did not believe Goldsmith because his story did not match the facts of the crime as revealed during the police investigation.

Approximately two hours after confessing, Goldsmith made a second April 5, 1995, statement to the police (also presented to the jury) in which he stated that he, Movant, and Victim were driving around when Movant stopped the car because Victim "had to go to the restroom[.]" Goldsmith's second statement continued, "[b]ut as soon as she got out and dropped her pants and started going to the bathroom he got out, reached in his pocket. Wam!" Goldsmith then claimed he saw Movant "pick her up and throw her in the pond." In this statement, Goldsmith also stated he saw Movant throw the murder weapon, a .38 caliber revolver, in the pond.

The third Goldsmith version presented to the jury came via· his January 8, 1996, preliminary hearing testimony. In it, Goldsmith testified that he, Movant, and Victim were "out drinking whiskey[ ]" to-

---

1. All rule references are to Supreme Court Rules (2003), unless otherwise indicated. All statutory references are to RSMo (1994), unless stated differently.

gether on January 14. Movant was driving and stopped the car so Victim could get out and urinate. Then, Goldsmith "heard a loud noise" and "figured [Movant] just pushed [Victim] down or something." He claimed the two drove away, leaving Victim at the deserted location. During this testimony, Goldsmith recanted his April 5, 1995, statements to the police that he or Movant killed Victim.[2]

In his post-conviction motion, Movant complained that his criminal trial lawyer was constitutionally ineffective for failing to present to the jury a fourth statement made by Goldsmith regarding Movant's and his involvement with Victim. This fourth version was a sworn statement by Goldsmith given to Movant's first trial lawyer on August 6, 1995. In that statement, Goldsmith claimed that he and Movant were at the J & M bar on the night that Victim was murdered, i.e., January 14, 1995. Goldsmith stated that he and Movant left the bar at approximately 10:30 to 11:00 P.M., and they went to a friend's home and stayed there the rest of the night. He further claimed that Victim remained at the bar when he and Movant left. In the August 6 statement, Goldsmith recanted his previous statements to the police.

Movant argues his trial counsel should have attempted to present Goldsmith's August 6, 1995, statement to the jury because it "would have rehabilitated Goldsmith's prelim. hearing testimony that the State charged [sic] was fabricated." Movant premises this allegation on the assumption that the August 6 statement was a "prior consistent statement." At the

post-conviction hearing, Movant's trial counsel testified he never offered the August 6 statement into evidence because it was inconsistent with the alibi defense presented at trial. The motion court concluded that counsel was not ineffective because the evidence was inadmissible, and the statement was not a prior consistent statement.

In his post-conviction motion, Movant alleged that his appellate counsel was ineffective for failing to raise a claim of plain error on appeal involving the following testimony. At trial, police officer Hinesly testified about an interview he conducted with Movant. In that interview, Movant denied even knowing the Victim. Hinesly then told Movant the police knew he was lying because the Victim had moved into his house a few days before the murder. Thereon, the following question was posed to Hinesly: "And was it at that time that the defendant terminated the interview?" The officer answered, "Yes, sir." Movant alleges that this was an improper comment on his invocation of the right to remain silent; however, no objection was rendered, and the issue was not preserved in the motion for a new trial.

The motion court concluded that Movant waived the error; consequently, appellate counsel was not ineffective as the appellate court would not have reviewed it even for plain error. The motion court also found that the alleged error was non-prejudicial because, even if the error was not waived, the appellate court would not have reversed the conviction on plain error review. This appeal followed.

---

**2.** In reviewing Movant's direct appeal, this court noted "it was within the province of the jury in this matter to determine whether [Goldsmith] was telling the truth in his [second statement], or whether his preliminary hearing testimony was true." *Neely,* 979 S.W.2d at 560. To emphasize that point, we noted that, at the preliminary hearing, Goldsmith "gave vague and ambiguous answers to most of the questions ... regarding [Movant's] involvement in murdering [Victim][,]" whereas his second April 5, 1995, statement "unequivocally implicated [Movant] in murdering [Victim]." *Id.* at 559.

## STANDARD OF REVIEW

Appellate review of a motion court's disposition of a Rule 29.15 motion is limited to deciding "whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). A motion court's findings and conclusions are clearly erroneous only if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made. *Franklin v. State*, 24 S.W.3d 686, 689 (Mo.banc 2000).

In determining the effectiveness of trial and appellate counsel, Missouri courts use the test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Franklin*, 24 S.W.3d at 689; *Mallett v. State*, 769 S.W.2d 77, 83 (Mo.banc 1989); *State v. Kidd*, 75 S.W.3d 804, 809[3] (Mo.App. 2002); *Salazar v. State*, 66 S.W.3d 755, 761 (Mo.App.2001). The *Strickland* test provides that to prevail on a claim of ineffective assistance of trial counsel, a movant must show: First, that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and, second, that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

To demonstrate prejudice due to ineffective assistance of appellate counsel, a movant must show a reasonable probability that, but for counsel's unreasonable failure to raise the issue, Movant would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000); *Holman v. State*, 88 S.W.3d 105, 109–10 (Mo.App.2002). If a movant fails to satisfy either the performance or the prejudice prong of the *Strickland* test, then an appellate court need not consider the other, and the movant's claim

must fail. *Vogel v. State*, 31 S.W.3d 130, 135[3] (Mo.App.2000).

### Point I: Failure to introduce August 6, 1995, statement at trial

In his first point, Movant alleges that his trial counsel was ineffective for not offering into evidence Goldsmith's August 6, 1995, sworn statement. He asserts that the State implied, during his criminal trial, that Goldsmith, because of a thirty-year friendship with Movant, had lied at the preliminary hearing when he exculpated Movant. Movant then claims that the August 6 statement was a prior consistent statement that would have rehabilitated Goldsmith by bolstering his trial testimony that neither he nor Movant had killed Victim.[3] This claim fails for a number of reasons.

Prior consistent statements are admissible to rehabilitate a witness whose credibility is attacked by an express or implied claim of recent fabrication of trial testimony. *State v. Ramsey*, 864 S.W.2d 320, 329[8] (Mo.banc 1993). The statement must be consistent with trial testimony, and it must have been made prior to the occurrence of the corrupting influence to falsify. *Id.* "Nevertheless, 'prior consistent statements are admissible into evidence for the purpose of rehabilitation *if, and only if,* the prior consistent rehabilitating statement was made *prior to the impeaching statement.*'" *State v. Norville*, 23 S.W.3d 673, 678–79[6] (Mo.App. 2000) (quoting *State v. McClendon*, 895 S.W.2d 249, 252 (Mo.App.1995)) (emphasis supplied).

Here, the trial court properly allowed the State to put Goldsmith's preliminary hearing testimony into evidence during Movant's criminal trial. *Neely*, 979

---

3. Hereafter, we refer to Goldsmith's preliminary hearing testimony as the "trial testimony" because it was read into the record and treated as "live" testimony.

S.W.2d at 557. Moreover, no error resulted when the trial court allowed the state to introduce Goldsmith's two April 5, 1995, statements. These statements were admissible to show the jury that Goldsmith's preliminary hearing testimony was inconsistent with what he had earlier told officers. As such, Goldsmith's April 5, 1995, statements to the police were impeaching statements used at Movant's criminal trial. Goldsmith's August 6, 1995, statement, which Movant now argues was a "prior consistent statement" that should have been offered at trial, was not made by Goldsmith until four months after the impeaching statement. Consequently, Goldsmith's August 6 statement to his lawyer did not qualify as a prior consistent statement and would not have been admissible at Movant's criminal trial had his lawyer tried to put it in evidence. *Norville*, 23 S.W.3d at 678–79[6]; *McClendon*, 895 S.W.2d at 252. Counsel cannot be held ineffective for failing to offer inadmissible evidence. *Barnum v. State*, 52 S.W.3d 604, 608[13] (Mo.App.2001).

Moreover, the August 6 statement was *inconsistent* with the trial testimony. For instance, in the August statement, Goldsmith claimed that he and Movant were at the J & M bar on the night that Victim was murdered, but they left at approximately 10:30 to 11:00 P.M. for a friend's home and stayed there the rest of the night. He further claimed that Victim was alive and remained at the bar when he and Movant left. The trial testimony, however, placed Movant at the murder scene with the Victim on the night of her death. Although Goldsmith *generally* claimed in both statements that Movant did not kill Victim, the material aspects of the two stories were entirely inconsistent. Conse-

quently, the statement was inadmissible as a "prior consistent statement." [4] *Ramsey*, 864 S.W.2d at 329[8]. This provides an additional basis for a finding that trial counsel was not constitutionally ineffective. *Barnum*, 52 S.W.3d at 608.

Finally, we note counsel testified that the statement was inconsistent with the alibi defense. The alibi defense generally revealed that Victim left the bar on the night of her death around 8:30 P.M., and Movant remained there until 12:00 A.M. Thereafter, Movant was at another bar until the early morning hours. The State's evidence showed that the time of Victim's death was as early as 5:00 to 6:00 P.M., but no later than 9:30 to 10:00 P.M. Goldsmith's third statement claimed that he and Movant left the bar at approximately 10:30 P.M. and Victim was still alive. As counsel stated, Goldsmith's August 6 statement was wholly inconsistent with the alibi defense. Decisions based upon reasonable trial strategy cannot provide a basis for a finding of ineffective assistance of trial counsel. *Clark v. State*, 94 S.W.3d 455, 460[3] (Mo.App.2003).

Movant's trial counsel did not provide ineffective assistance of counsel when he chose not to use Goldsmith's August 6, 1995, statement at trial. The motion court's finding in this regard is not clearly erroneous. Point denied.

### Point II: Failure to raise a claim of plain error on appeal

■ In his second point, Movant alleges that his appellate counsel was ineffective "for failing to brief on appeal that the trial court plainly erred in allowing Hinesly to testify" that "[Movant] terminated the interview" because this was an alleged improper comment on Movant's invocation of

---

4. The statement was inadmissible for an additional reason, namely, that the "prior consistent statement" was made *after* the alleged

corrupting influence (friendship of 30 years) occurred. *Ramsey*, 864 S.W.2d at 329[8].

his right to remain silent. Movant claims that this "type of error has warranted reversal on plain error grounds in numerous cases before." Consequently, Movant argues that appellate counsel was ineffective for failing to raise the issue on direct appeal. We disagree.

■■■ "It is well established that a defendant's post-arrest silence or language representing silence cannot be used as evidence to incriminate him." *State v. Frazier*, 927 S.W.2d 378, 379[4] (Mo.App.1996) (citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). "When analyzing a *Doyle* violation claim, courts must 'treat a defendant's invocation of his *Miranda* rights not as a statement, but as post-*Miranda* warnings silence.'" *State v. Dexter*, 954 S.W.2d 332, 338 (Mo.banc 1997) (quoting *Fields v. Leapley*, 30 F.3d 986, 990 (8th Cir.1994)). This "silence" cannot be "remarked on, testified to nor implied in the prosecution's presentation of its case." *State v. Tims*, 865 S.W.2d 881, 885[6] (Mo.App.1993).

■■■ Once the right to remain silent has been waived, however, the State is free to show the circumstances under which an interrogation was terminated. *Frazier*, 927 S.W.2d at 380. In this regard, the *Tims* court held:

"While we caution that any testimony must be carefully analyzed regarding the implications resulting from a defendant's silence, *merely testifying to the conclusion of an interrogation after a defendant waived his right to silence is not prejudicial error.*" (Emphasis supplied).

865 S.W.2d at 886[10]. Testimony is appropriate where no inference of guilt can be reasonably drawn by the accused's silence. *Id.* at 886. Stated otherwise, it is improper to use a defendant's post-arrest, post-*Miranda* silence as affirmative proof of guilt or to impeach the accused's trial testimony, but a witness may testify regarding the defendant's silence when it is not used for either of those purposes. *State v. Anderson*, 79 S.W.3d 420, 441[42] (Mo.banc 2002).

Here, Movant stated that he did not know the Victim. Hinesly then confronted Movant with the fact that she moved into his home a few days before the murder. Hinesly testified it was at that point when Movant "terminated the interview." Movant was not faced with a direct charge of guilt. The only reasonable inference from Movant's silence is that he was lying about knowing the Victim. It is equally inferable that he lied because he did not want to become involved in the murder investigation as he was told that Goldsmith had already confessed to the crime. It would seem entirely unreasonable to additionally infer guilt of *murder* from this "silence."

In *United States v. Harris*, 956 F.2d 177 (8th Cir.1992), the defendant (Harris) made an incriminating statement, i.e., "You got me, what else can I say." *Id.* at 179. Thereafter, he "asked for an attorney and the questioning ceased." *Id.* In closing argument, the prosecutor reviewed the circumstances of Harris's confession and finished by noting that "[Harris] conclude[d] the interview[ ]" after making the statement. *Id.* at 181. The court held that the prosecutor's comment that the defendant ended the interview was permissible, i.e., it was not an improper comment on Harris's invocation of the right to remain silent. *Id.*

Likewise, we find that the comment at issue here, i.e., "defendant terminated the interview," was permissible. Consequently, if the issue had been raised on direct appeal, this court would have found no error, plain or otherwise. Appellate counsel is not ineffective for failing to raise a meritless issue on appeal. *Hall v. State*,

16 S.W.3d 582, 588 (Mo.banc 2000). Point denied.

This court is not left with a definite and firm impression that a mistake has been made. The motion court's findings of fact and conclusions of law are not clearly erroneous. The judgment denying Movant's Rule 29.15 motion for post-conviction relief is affirmed.

PARRISH and RAHMEYER, JJ., concur.