Tamir Anthony HILL, Movant–
Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 26476.

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 2005.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Alison K. Brown, Office of Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Judge.

Tamir Anthony Hill ("Movant") seeks post-conviction relief via a Rule 29.15 motion after he was convicted of murder in the second degree (§ 565.021) and armed criminal action (§ 571.015).[1] Movant's Rule 29.15 motion charged two instances of ineffective assistance of appellate counsel. First, he alleged ineffectiveness in failing

to raise a sufficiency of the evidence point on appeal, and second, he alleged ineffectiveness for the failure to urge reversal due to jury instruction error. Movant also alleged his trial attorney rendered ineffective assistance when he failed to impeach the testimony of an eyewitness with an alleged prior inconsistent statement.

After reviewing the records and files of the criminal and post-conviction cases, the motion court found they conclusively showed Movant was entitled to no relief. Accordingly, it issued findings of fact and conclusions of law as provided in Rule 29.15(j) and dismissed Movant's case.[2] This appeal followed. We affirm.

## STANDARD OF REVIEW

Appellate review of a motion court's disposition of a Rule 29.15 motion is limited to deciding "whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). A motion court's findings and conclusions are clearly erroneous only if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made. *Franklin v. State*, 24 S.W.3d 686, 689 (Mo.banc 2000).

"In determining the effectiveness of trial and appellate counsel, Missouri courts use the test established in *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)." *Neely v. State*, 117 S.W.3d 731, 735 (Mo.App.2003). To prevail on a claim of ineffective assistance of trial counsel, a

---

1. All rule references are to Supreme Court Rules (2004), unless otherwise indicated. All statutory references are to RSMo (2000), unless stated differently.

2. On appeal, both parties cite to the underlying criminal trial transcript and legal file. Moreover, those records have been filed with this court. As such, the parties tacitly agree that the motion court judge (also the criminal

trial judge) implicitly took judicial notice of the file from Movant's criminal trial. *See, e.g., C.A.W. v. Weston*, 58 S.W.3d 909, 914 (Mo.App.2001); *State v. Dillon*, 41 S.W.3d 479, 482–83[3] (Mo.App.2000); *Schrader v. State*, 561 S.W.2d 734, 735[2] (Mo.App.1978). Having done so, both parties waive any complaint about the motion court's use or our use of the criminal trial records in ruling the post-conviction motion.

movant must show: First, that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and, second, that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65. If a movant fails to satisfy either prong of the *Strickland* test, then an appellate court need not consider the other, and the claim must fail. *Neely*, 117 S.W.3d at 735.

When discussing ineffective assistance of trial counsel, prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. When referring to ineffective assistance of appellate counsel, "a movant must show a reasonable probability that, but for counsel's unreasonable failure to raise the issue, [he or she] would have prevailed in his [or her] appeal." *Neely*, 117 S.W.3d at 735.

As here, when no evidentiary hearing is held, the record must conclusively show that the movant is entitled to no relief. Rule 29.15(h); *Brooks v. State*, 51 S.W.3d 909, 913 (Mo.App.2001).

## FACTS

On March 12, 2001, a Springfield, Missouri, police officer pulled over a car that contained Movant, Melvin Parrow ("Parrow"), Jesse Tao Sio ("Sio"), and Chris Ackfeld ("Ackfeld"). Before the stop, Movant saw the police cruiser turning to follow. Because of that, Movant threw his handgun out of the car before the stop. Ackfeld also threw out some marijuana.

After investigating, the police found the vehicle's driver had a valid license; consequently, the officer allowed Movant and his companions to go on their way. Once the police left, the group drove back to the general area where they discarded the gun and drugs.

Once there, Movant began searching for the items while Parrow, Sio, and Ackfeld remained in the car. Movant found the gun but not the marijuana. While searching, Movant was approached by Terron Finley ("Victim"), and the two began arguing in front of a private residence. During the argument, Movant drew his gun and pointed it at Victim. At that point, Victim pulled his own gun and opened fire on Movant.[3]

After a round of gunfire by both parties, Victim retreated by running toward the backyard of the subject house. Movant also moved toward the backyard, running along the side of the house opposite to the side where Victim retreated. Once Movant made his way to the rear of the house, he shot Victim in the back. Victim died from a loss of blood shortly thereafter.

At Movant's criminal trial, numerous witnesses testified, and differing accounts of the shooting were presented to the jury. The differences included contrary accounts of whether it was Victim or Defendant who first brandished a gun. However, all witnesses agreed on one fact, namely, Victim fired the first shots. Based on that, the trial court instructed the jury to acquit Movant if they found he acted in self-defense. The court, however, refused to give a "defense of others" instruction proffered by Defendant. Movant now claims his appellate lawyer was ineffective in fail-

---

3. One of Movant's post-conviction allegations is that his appellate counsel in the criminal case should have challenged the sufficiency of the evidence to support his convictions. Accordingly, our initial account of the evidence is that most favorable to the jury's verdict. *Walker v. State*, 34 S.W.3d 297, 301 (Mo.App. 2000). Other fact scenarios supported by the record are set forth later when relevant to our disposition of this appeal.

ing to raise this refusal as a claim of trial court error in his direct appeal. Additional facts are given below when relevant to our discussion of issues presented by this appeal.

### Point I: Ineffective Appellate Counsel–Sufficiency of Evidence

■ Movant's first point maintains the motion court clearly erred in denying him post-conviction relief because the record shows his appellate counsel was ineffective for not urging reversal on the ground there was insufficient evidence to support a second-degree murder conviction. The argument section of Movant's brief summarizes his claim as follows:

"There was insufficient evidence presented by the state to establish that [Movant] did not act with sudden passion from adequate cause. Rather, the *undisputed* fact that [Victim] shot at [Movant] first confirms that [Movant's] subsequent actions occurred under the influence of sudden passion arising from adequate cause. There was no evidence refuting sudden passion, even accepting the state's theory that [Movant] shot [Victim] while he was retreating."

■ As we understand it, Movant is arguing there was no evidence as to who was the initial aggressor and it is undisputed that Victim fired the first shots.[4] With that as his premise, Movant asserts his return of gunfire could only be viewed as an act of sudden passion arising from adequate cause. Implicit in this argument is

the recognition that manslaughter was the only crime for which he could possibly be found guilty.[5]

We address this argument with the following in mind: Had appellate counsel made a sufficiency of the evidence argument on direct appeal, the reviewing court would have used the evidence most favorable to the verdict, accepting as true any evidence supporting the verdict while disregarding any contrary evidence and inferences. *Walker* 34 S.W.3d at 301[3]. Further, the reviewing court would have been limited to deciding if there was sufficient evidence from which a reasonable finder of fact might have found the accused guilty beyond a reasonable doubt. *Id.*

Contrary to Movant's argument here, the record of his criminal trial contained evidence which, if believed, dispelled his claim of sudden passion. This is found in eyewitness testimony to the effect that Movant first pointed his gun at Victim without provocation by Victim. From that evidence, the jury reasonably could have inferred (as it obviously did) that Movant was the initial aggressor, i.e., he (Movant) first threatened Victim by pointing the gun at him and Victim was only attempting to defend himself when he raised his gun and began firing at Movant. As such, a direct appeal argument that the evidence *only* supported a conviction for voluntary manslaughter would have failed.[6] Consequently, Movant cannot show he was prejudiced by his appellate counsel's failure to raise

---

4. "An initial aggressor is one who first attacks or threatens to attack another." *State v. Hughes*, 84 S.W.3d 176, 179[1] (Mo.App. 2002).

5. "Sudden passion" means "passion *directly caused by* and arising out of provocation by *the victim* ... which arises at the time of the offense and *is not solely the result of former provocation.*" § 565.002(7) (emphasis supplied). Sudden passion cannot arise unless a defendant shows the victim took some action

to inflame the defendant and that the defendant was not the initial aggressor. *State v. Everage*, 124 S.W.3d 11, 16 (Mo.App.2004); *State v. McCoy*, 971 S.W.2d 861, 864 (Mo. App.1998).

6. Essentially, voluntary manslaughter consists of committing the crime of second-degree murder while under the influence of sudden passion arising from adequate cause. §§ 565.021 and 565.023.

that issue. *Parham v. State,* 77 S.W.3d 104, 107 (Mo.App.2002); *Walker,* 34 S.W.3d at 302. Point denied.

### Point II: Defense of Others instruction

■ Movant's second point charges the motion court erred by rejecting his ineffective assistance claim stemming from his appellate counsel's failure to raise the jury instruction issue on direct appeal. The proffered but rejected jury instruction hypothesized that Movant shot Victim in order to protect Parrow, Sio, and Ackfeld. Movant argues that a reasonably competent lawyer would have raised the court's refusal of this instruction as a point of error on appeal.

■ Generally stated, a person is justified in using deadly force to protect third parties against death or serious physical injury if he or she reasonably believes that such force is necessary to thwart the attacker. § 563.031. To inject this issue into his case, Movant was required to present substantial evidence showing: (1) an absence of provocation or aggression from himself; (2) a reasonable belief that deadly force was necessary to protect the third parties against an imminent danger of death or serious physical injury; (3) a reasonable cause for that belief; and (4) an attempt by himself to do all within his power consistent with his own personal safety to avoid the danger and the need to use deadly force on Victim. *Vogel v. State,* 31 S.W.3d 130, 141[12] (Mo.App.2000).

■ The trial court is obligated to instruct on self-defense or defense of others if the evidence, when viewed in the light most favorable to the defendant, supports giving the instruction. *Id.* at 141[11]. The failure to give an instruction when required will not result in reversible error unless the failure prejudiced the defendant. *State v. Starr,* 998 S.W.2d 61, 65–66 (Mo.App.1999); *State v. Rickman,* 920 S.W.2d 615, 618 (Mo.App.1996). "In order to determine whether the omission of an instruction constitutes prejudicial error, we must consider the facts of the case in conjunction with the submitted instructions." *State v. Jones,* 930 S.W.2d 453, 455 (Mo.App.1996).

Comparison of this case with *State v. Jones,* 627 S.W.2d 322 (Mo.App.1982), illustrates how individual facts govern whether prejudice results when a trial court refuses to give a "defense of others" instruction. In *Jones,* the defendant's sister (Karen Thomas) and aunt (Janie Green) were fighting with the victim's wife (Delores) in the victim's living room. After another person separated Delores and Janie Green, the victim stepped in and knocked Karen Thomas to the floor. The victim's wife, Delores, then attacked Karen with a wine bottle. Thereon, the defendant (who was nearby) entered and fired a shot that killed the victim.

Although the trial court submitted an instruction on self-defense, the defendant's conviction was reversed on appeal because the court refused to instruct the jury on defense of others. The western district's prejudice analysis follows:

"Evidence was at variance as to whether [the defendant] said anything to the victim before firing his gun and in what position [the victim] was when he was shot. It was, however, agreed that [the victim] had struck Karen Thomas knocking her to the floor and that he was bent over her when [the defendant] entered.

. . . .

"In the subject case, the jury could have found that [the defendant] was drawn to the room by his sister's screams for assistance and, upon entering, that he found his sister prostrate with [the victim] bending or kneeling and striking the girl with his fists. When [the defendant] yelled for [the victim] to stop, [the victim] rose and started toward [the defendant]. If defendant's evidence and

that of his supporting witnesses were believed, the events occurred in rapid succession with little to differentiate [the victim's] assault upon Karen Thomas from his transfer of attention to [the defendant]. Intervention by [the defendant] in the former brawl immediately provoked the latter, both being closely intertwined in time and situs. [The defendant] was entitled to the additional instruction on defense of another person *enabling the jury to consider both possibilities as justification for the use of deadly force."*

*Id.* at 323–24[2] (emphasis supplied).

The essence of the *Jones* decision lies in its recognition that the two fact possibilities from which the jury could choose also generated two justification possibilities for the jury to decide. On one hand, the jury needed to decide whether the defendant was justified in shooting the unarmed victim as he rushed toward the defendant, per the self-defense instruction that was given. On the other hand, the jury should have been allowed to consider whether the defendant was justified in shooting the unarmed victim because of victim's ongoing assault on the defendant's sister, per a defense of others instruction which was not given. Under those circumstances, the trial court's refusal to instruct the jury on defense of others was prejudicial. Those are not the facts here.

In this case, as in *Jones,* witnesses testified to more than one account of the shooting. However, out of the three fact scenarios presented here, only *one* justification possibility existed.

First, there is evidence from which the jury could have believed Movant was the initial aggressor because he pointed his gun at Victim without being provoked. As a part of this body of evidence, the jury could have found Victim then pulled his gun and fired toward Movant and the car's passengers. Movant then returned fire,

hitting Victim as he turned to flee, or in the alternative, Victim fled toward the backyard of the house while Movant pursued him, and once in the backyard, Movant shot Victim in the back.

Second, evidence was presented from which the jury could have believed Victim was the initial aggressor because he approached Movant and began shooting in Movant's direction before Movant pulled out his gun. When Movant returned fire, Victim then withdrew from the fray by turning and running toward the backyard of the house, but Movant pursued Victim, shooting him in the back while the two were in the backyard.

If the jury believed the first or second set of facts, then justification was unproven and Movant cannot show he was prejudiced by the alleged instructional error. This follows because under the first scenario, Movant was the initial aggressor and never withdrew, whereas, under the second version, Victim was the initial aggressor, but he withdrew from the conflict and Movant became the aggressor.

From the third body of evidence, the jury could have found Victim approached Movant and began shooting in his direction (while in front of the house) without being provoked or threatened by Movant. When the shooting started, Movant and the car carrying Parrow, Sio, and Ackfeld were in the same line of fire, and while in these respective positions, Movant returned fire, striking Victim in the back as he was turning to leave. Then, Victim stumbled to the back of the house (without any pursuit by Movant) where he collapsed and died.

 Because of this third fact possibility, a defense of others instruction should have been given. However, Movant was not prejudiced by its absence. Unlike the *Jones* case where there were separate justification possibilities for the jury to con-

sider, that situation is absent here. This follows because Movant and his companions were in the same line of fire. As such, Movant's return of fire would have been in defense of both his companions and himself.

Under the circumstances, the jury's answer to one question fully settled the justification issue, namely, was Movant the aggressor or was Victim the aggressor?[7] This question was posed to the jury via the self-defense instruction which answered it adversely to Movant by convicting him. In contrast with the record in *Jones,* the record here contains no facts to· support the notion that the jury's resolution of the justification issue might have been different if the defense of others instruction had also been given.

It follows, therefore, that if appellate counsel had raised the instructional error in the direct appeal, the reviewing court would have found Movant was not prejudiced by the error and reversal would not have occurred. *Starr,* 998 S.W.2d at 66–67. *See also State v. Glass,* 136 S.W.3d 496, 515 (Mo.banc 2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 869, 160 L.Ed.2d 784 (2005) (no error in failure to give lesser offense instruction (manslaughter) in first-degree murder case when second-degree murder instruction had also been given because the jury was given the opportunity to consider the "deliberation" elements and facts, but rejected them via conviction of first-degree murder).

Being unable to show that reversal would have occurred, Movant cannot show he was prejudiced by his appellate counsel's failure to raise the instruction issue. *Parham,* 77 S.W.3d at 107; *Walker,* 34 S.W.3d at 302. Without showing prejudice, Movant cannot sustain his claim of motion court error. Point denied.

### Point III: Failure to Impeach Witness

■ Movant's final point maintains the motion court clearly erred when it found Movant's criminal trial lawyer was not constitutionally ineffective for failing to impeach the testimony of a witness with an alleged prior inconsistent statement.

■ "The mere failure to impeach a witness does not entitle a movant to post-conviction relief." *Kelley v. State,* 24 S.W.3d 228, 232[6] (Mo.App.2000). A movant must establish that the impeachment would have provided him or her with a defense to the crime or must prove that there is a reasonable probability that the impeachment would have changed the outcome of the trial. *State v. Hall,* 982 S.W.2d 675, 687 (Mo.banc 1998).

Nicole Riel, a thirteen-year-old eyewitness to the shooting, was called by the State. She testified on direct examination that she. saw "two guys [Movant and Victim] yelling at each other" prior to the shooting. On cross-examination, she admitted that she "heard three men yelling." The third man was Parrow (the driver of the car). On redirect, the prosecutor asked her, "Was there another man *in connection with that car* who was yelling to the people?" Riel answered in the affirmative. She also stated on redirect, however, that she did not see the third man.

Movant argues that this testimony is inconsistent with a statement she made to the police shortly after the shooting. In that statement, Riel claims to have heard three men yelling, and "the driver came out of the car with the drivers [sic] door open but standing in the door way."

The only inconsistency between her at-trial testimony and her previous statement involved whether she *saw* the third man. Riel had consistently stated that there was

---

**7.** Under the first fact possibility, Movant was the initial aggressor, and under the second, he became the aggressor after Victim retreated.

a third man by the car who was yelling. Whether she actually saw this man is irrelevant to the case.

Inexplicably, Movant argues that the written statement and the fact that Parrow exited the car "would have supported the defense argument that the third shooter was [Parrow], as it was undisputed at trial that Parrow was the one driving Ackfeld's car." As the motion court correctly noted, "at the time of trial, the defense was NOT that Melvin Parrow was the third shooter." From a close reading of the record, the defenses presented at trial were self-defense and that there was a third shooter who killed Victim *behind the house.* Absolutely no evidence indicated Parrow left the vicinity of the car.

Any inconsistency in Riel's trial testimony and her written statement, if brought forth at the trial, would not have, in any way, affected the jury's decision. This is especially true considering the overwhelming evidence of guilt. Movant confessed to chasing Victim behind the house and firing shots at him. After the shooting, Movant stated, "I got him." Instead of calling the police (if he honestly believed he was justified in the shooting), Movant fled to Pennsylvania, dismantling the gun during the bus trip, and discarding the pieces along the way.

Considering these facts in conjunction with the lack of any probative value of the inconsistency, the motion court correctly found that Movant's trial counsel was not ineffective. There existed no reasonable probability that the impeachment would have any effect on the outcome of his case, nor would it have provided a defense. Consequently, Movant's trial counsel was not ineffective for failing to bring it up at the trial. *Hall,* 982 S.W.2d at 687; *Kelley,* 24 S.W.3d at 232. Point denied.

The motion court's findings of fact and conclusions of law are not clearly erroneous. This court is not left with a definite and firm impression that a mistake has been made. The motion court's judgment denying Movant's Rule 29.15 motion is affirmed.

PARRISH, P.J., and BATES, C.J., concur.