Vernon HENDERSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 61439.

Missouri Court of Appeals,
Western District.

Aug. 5, 2003.

Andrew Allen Schroeder, Appellate Defender Office, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, John Munson Morris, Dora A. Fichter, Office of Attorney General, Jefferson City, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, Presiding Judge, JAMES M. SMART, JR., Judge, and RONALD R. HOLLIGER, Judge.

RONALD R. HOLLIGER, Judge.

Vernon Henderson appeals from the denial of his Rule 29.15 motion for post-conviction relief after an evidentiary hearing. In his sole point on appeal, he contends that he received ineffective assistance of counsel because of the failure to develop and present a defense of diminished capacity in his trial for first degree murder. We hold that the motion court's finding that trial counsel made a reasonable strategic decision is not clearly erroneous and affirm the judgment of the motion court.

Henderson was convicted for first degree murder and armed criminal action in 1999, and that conviction was affirmed on direct appeal via memorandum opinion on December 8, 2000. *State v. Henderson*, WD 57704. The evidence at trial showed that Henderson and the victim, Kim Martin, had been married but separated for a long period before her murder in 1996. Henderson and Martin had two children and, when Henderson stopped providing for the children's support, Martin sought child support through the courts. Henderson and Martin argued about her attempt to obtain a support order. Both appeared in court in November 1996. Henderson was visibly upset and told his girlfriend that he was going "to kill that bitch." He also told his teenage son that he was "going to get a fucking gun and shoot some fucking body."

Six days later and two days before they were to return to court, Henderson shot Martin six times in front of his mother's house when Martin arrived to pick up their daughter. The daughter saw her father and mother arguing and heard her father ask calmly, "Why did you do it?" The daughter heard one gunshot and, after a five-second pause, more gunshots. The daughter went to the house, and Henderson walked away.

Henderson went to his girlfriend's house and announced that he had "done it." He said that he had "shot her." Police recovered the gun from the girlfriend's house and determined that the .380 caliber handgun had a heavy, 12–pound trigger pull.

Henderson's trial was delayed for some months after he was twice found incompetent to stand trial. After confinement at Fulton State Hospital, he was finally declared to be competent and went to trial in 1999. The court submitted the offenses of first and second degree murder. Trial counsel argued for second degree murder on the basis that the shooting occurred during an argument in sudden passion and that Henderson was stressed and upset about the court action seeking child support. The jury rejected this defense and found him guilty of first degree murder and armed criminal action.

### The Post–Conviction Relief Motion

■ In his sole point on appeal, Henderson claims that trial counsel was ineffective in failing to investigate, provide necessary information to a psychiatrist,

and call the psychiatrist as a witness to testify that, as a result of a mental disease and defect, Henderson lacked the capacity to deliberate required for first degree murder. Original trial counsel had retained Dr. Stephen Peterson, a psychiatrist, to examine Henderson for his fitness to stand trial. Henderson had a psychiatric history and had already been found incompetent to stand trial by the state's mental health expert. Dr. Peterson concluded that Henderson was suffering from a psychotic disorder, possibly schizophrenia, as well as major depression and severe emotional decompensation. He did not believe that Henderson was competent to stand trial but told counsel that he had no opinion on the issue of criminal responsibility under Chapter 552 because he did not have sufficient information, particularly copies of police reports and witness statements. Dr. Peterson examined Henderson on two more occasions and ultimately concluded that he was competent to stand trial. He expressed the opinion to trial counsel that he did not believe there was a basis for a NGRI defense but volunteered that Henderson probably had a diminished capacity to deliberate for first degree murder. He indicated that he would need the police reports and witness statements to confirm and support such an opinion. Trial counsel chose not to provide the reports to Dr. Peterson and did not call him as a witness or pursue a diminished capacity defense.

Dr. Peterson was provided the reports and statements by post-conviction counsel and testified at the evidentiary hearing. Dr. Peterson testified that, after reviewing the reports and considering his own exams and Henderson's prior psychiatric records, in his opinion Henderson lacked the capacity to "coolly deliberate." He acknowledged that he had administered a MMPI test to Henderson before the original trial and reported to trial counsel that the test was invalid because of exaggerated responses by Henderson. He also admitted that some subscales of the test indicated that Henderson had a carefully exaggerated response time. He also acknowledged that the State's original psychologist believed that Henderson was exaggerating and falsely reporting some symptoms. Finally, he admitted that, even at the time of the post-conviction hearing, he did not have information that two witnesses said that Henderson had made statements about killing Martin days before the murder.

Henderson's trial counsel testified that Dr. Peterson told him that there was no support for an NGRI defense but that there might be a possibility of a diminished capacity defense. He testified that he did not pursue this defense because he did not believe he could sell it to a jury based on the fact evidence that the State had evidence of clear deliberation. He also testified that calling Dr. Peterson would open the door for the State to call its witness to testify about Henderson's malingering and that it would hurt the credibility of the defense when Dr. Peterson would have to agree that Henderson was exaggerating symptoms.

▮▮▮ Our review is limited to a review of whether the motion court's findings of fact and conclusions of law were clearly erroneous. *Rousan v. State*, 48 S.W.3d 576, 581 (Mo. banc 2001). The findings are clearly erroneous only if, after a review of the entire record, we are left with the firm and definite impression that a mistake has been made. *State v. Clay*, 975 S.W.2d 121, 140 (Mo. banc 1998). To prevail, movant must establish both that counsel's performance fell below that of a reasonably competent attorney and that he was thereby prejudiced. *State v. Miller*, 981 S.W.2d 623, 633 (Mo.App.1998).

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and the presumption is that the challenged action was sound trial strategy. *State v. Kinder,* 942 S.W.2d 313, 335 (Mo. banc 1996).

■ Henderson has not overcome those presumptions. The post-conviction record indicates that trial counsel was aware of and considered a possible diminished capacity defense. He made a deliberate choice to pursue a second-degree murder charge on an alternative theory of sudden passion following an argument between the victim and Henderson. He evaluated and considered the State's evidence of deliberation (which he believed to be strong) in deciding not to pursue the diminished capacity defense. He could well have believed, and apparently did, that although both defenses were not logically inconsistent that, given the evidence of deliberation and both doctors' testimony about malingering, the defense he preferred would be seriously undermined if both defenses were presented to the jury. The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances. We believe that the motion court did not err in finding that Henderson's trial counsel made a reasonable strategic trial decision not to prepare and present a diminished capacity defense.

The judgment denying relief under Rule 29.15 is affirmed.

JOSEPH M. ELLIS, Chief Judge, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.