**Darrell Eugene HUFFORD,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent–**
**Respondent.**

No. 27279.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 29, 2006.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Darrell Eugene Hufford ("Movant") appeals the denial, after an evidentiary hearing, of his post-conviction motion, filed pursuant to Rule 29.15.[1] Movant claims his trial counsel was ineffective in failing to call two witnesses whose testimony would have contradicted the State's theory and supported Movant's defense. We affirm.

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following. Lorissa Henson ("Lorissa") and her husband (collectively referred to as "the Hensons") owned a house in Butler County, Missouri. The Hensons, who were over-the-road truck drivers, asked Lorissa's father, Thomas Berry ("Berry") to check on their house while they were away. Berry went to the house around 3:30 p.m. on July 17, 2001, and found that the back door had been broken open. He discovered that the television and stereo had been taken from an entertainment center in the living room and two couches had been moved away from the wall. Berry called the Butler County Sheriff's Department and reported the break-in. A deputy sheriff came to the property and took Berry's statement.

Berry left the house but returned a couple of hours later to secure the broken back door with some boards. As he approached the house, he noticed a white pick-up truck parked near the house, with its hood raised, and two men standing near the front of the truck. Berry grabbed a .12 gauge shotgun from his truck and walked toward the men, asking them what they were doing. One of the men, who Berry later identified as Movant, told Berry that their truck had stalled and they were trying to get it started. The other man was Jerry Cooper ("Cooper"). The Hensons' brown Ford Ranger was parked in front of the white pick-up, blocking the entrance to the garage. Berry wrote down the license number of the white pick-up after removing some weeds that were

---

**1.** All references to rules are to Missouri Rules of Criminal Procedure (2004) and all references to statutes are to RSMo (2000), unless otherwise indicated.

concealing the license plate. He then went to a neighbor's house and called the Butler County Sheriff's Office.

After Berry left, Movant removed the license plate from the truck, and he and Cooper left the property on foot. They came to a house, owned by George Wright ("Wright"), where they found a car and a pick-up truck. Movant could not find any keys for the vehicles and unsuccessfully attempted to hot-wire them. He and Cooper then walked to another house and obtained a ride from the occupant to the Wilhelmina Bar, where Movant called his brother to come after them. Movant's brother came to the bar and drove them to Movant's house. While there, Movant told Cooper that he had broken into the Henson house earlier that day, and that he had taken the television and stereo. Movant also told Cooper that he had gone back to the Henson house to steal a riding lawn mower from the garage.

After calling authorities, Berry returned to the house with a neighbor and discovered that the two men were gone. The white pick-up was still there, but its license plate was missing. A deputy sheriff arrived at the scene around 7:15 p.m. and took Berry's statement. The truck was later towed away.

Berry identified both Movant and Cooper from a photographic line-up as the men at the house on July 17, 2001. Peggy Otto ("Otto"), owner of the Wilhelmina Bar, also identified the pair from a photographic line-up as the men who were in her bar around 11:30 p.m. on July 17, 2001.

Movant was charged by amended information, as a prior and persistent offender, with the class C felony of burglary in the second degree, a violation of Section 569.170, and two counts of the class C felony of tampering in the first degree, violations of Section 569.080.1(2).[2] A jury found Movant guilty of the two tampering charges but acquitted him of the burglary charge. He was sentenced to a term of twenty years in the department of corrections on both counts with the sentences to run concurrently. Movant's direct appeal from that conviction was unsuccessful. *State v. Hufford,* 119 S.W.3d 654 (Mo.App. S.D.2003). He then filed a *pro se* motion to vacate, set aside or correct the judgment and sentence, pursuant to Rule 29.15, which was later amended by appointed counsel. After an evidentiary hearing, the court entered its judgment and findings of fact and conclusions of law denying Movant's motion. This appeal followed.

Appellate review of the denial of a Rule 29.15 motion for post-conviction relief is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *Maclin v. State,* 184 S.W.3d 103, 108 (Mo. App. S.D.2006). Clear error is found when, after a review of the entire record, we are "left with the definite and firm impression that a mistake has been made." *Id.*

In his sole point on appeal, Movant argues that the motion court clearly erred by denying his Rule 29.15 post-conviction motion, because his trial counsel was ineffective in failing to call two witnesses whose testimony would have contradicted the State's theory and supported Movant's defense. Specifically, Movant contends that the testimony of Bill Brock ("Brock") and Melvin Hufford ("Melvin")[3] would have established that, "prior to the time the

---

**2.** Appellant was originally charged in Butler County, but filed a change of venue, which was granted, and the case was transferred to New Madrid County for disposition.

**3.** We refer to Melvin Hufford by his first name to avoid confusion.

crimes allegedly occurred, [Movant] sold the white Ford pick-up in question to Curtis Pippins."

Movant has the burden to prove his claim of ineffective assistance of counsel by a preponderance of the evidence. Rule 29.15(i); *Maclin*, 184 S.W.3d. at 107. We review whether an attorney provided a criminal defendant with ineffective assistance of counsel under the two-pronged test developed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hill v. State*, 160 S.W.3d 855, 857 (Mo.App. S.D.2005). Movant must prove that 1) trial counsel failed to exercise the degree of skill, care and diligence of a reasonably competent attorney, and 2) that failure prejudiced Movant. *Maclin*, 184 S.W.3d at 107. Movant must prove both prongs in order to prevail. *Id.* at 108. Failure to satisfy either prong relieves the motion court of the necessity of reviewing the other. *Hill*, 160 S.W.3d at 858.

Prejudice exists where Movant has demonstrated "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

At the evidentiary hearing, Movant presented the testimony of Brock, and introduced the deposition of Melvin. Melvin testified in his deposition that he was at Movant's house between 8:00 and 8:30 on the morning of July 17, 2001. In addition to Movant, the following people were present: Cooper, Brock, Movant's wife, Kim Hufford, Melvin's wife, Leana Hufford,

and "another guy named Curt." When he arrived, Movant was selling the white Ford pick-up truck to Curt for $900, he had prepared a bill of sale, and they were removing items from the truck. Both Melvin and Movant made their living buying and selling automobiles. He said that Cooper and Curt left around 10:00 a.m.[4]; that Movant remained at his house; and that Melvin saw Movant off and on throughout the day. Around 6:00 p.m. that evening, Melvin arrived at Movant's house, and he, Cooper, and Movant left to go look at some automobiles around 6:30 p.m. After discovering that the individuals selling the automobiles were not home, Melvin dropped Cooper and Movant off at the Well Manor bar.[5] Melvin returned to pick up Movant and Cooper around 8:30 or 9:00 p.m., and he dropped the pair off at Movant's house sometime before 10:00 p.m. He explained that he was available and willing to testify at Movant's trial.

Brock said that he would have testified that he saw Cooper, Movant, and "another gentleman" at Movant's residence on the morning of July 17, 2001. Brock saw a white Ford pick-up truck at Movant's residence and recalled having seen Movant drive it before. Brock explained that Movant was going to sell the truck to the other gentleman. He did not see Cooper or the other gentleman drive the truck at that time, but he recalled seeing the other gentleman driving the truck later that evening or possibly the next day. Brock also explained that he was available and willing to testify at Movant's trial.

Movant's trial counsel was Wendell Hoskins ("Hoskins"). In preparing Movant's defense, Hoskins received the following discovery from the State: the police report

---

**4.** Melvin does not indicate whether they left in the white Ford pick-up or not.

**5.** There is no indication whether this is the same bar owned by Otto, referred to as the Double I Bar in Wilhelmina.

for the burglary at the Henson house; the police report for the tampering incident at the Wright house; and a number of written statements including those of Cooper and Otto. Hoskins testified that he deposed all of the State's witnesses. He explained to the motion court that his theory of defense was that Cooper and a mystery man were the perpetrators of the crimes, and that Cooper inculpated Movant at the insistence of the authorities. Hoskins' primary tactic in defending Movant was to attack the credibility of Cooper.

Hoskins explained that he had some contact with Melvin, although that was not explained further, and he never took a statement from him. He stated that Movant never indicated that Melvin was a witness, and the theory that the truck was owned by Movant, but sold the day of the crimes, was never brought to his attention. Hoskins said he never spoke to Brock. Hoskins was aware of Brock's name because Cooper identified him as his employer in his written statement to police. He also recalled that Cooper had said in his statement and in his deposition, that Movant had picked Cooper up from Brock's. Hoskins explained that he never interviewed Brock because "[he] didn't think that [they] needed to offer the State yet another corroborating witness."

Hoskins testified that he had many conversations with Movant about his defense leading up to the case, and that he asked Movant whether he had any witnesses. Movant testified that he gave Hoskins the following names as possible witnesses: Melvin, Brock, and Kim Hufford. However, Movant never testified that he made Hoskins aware of the particular theory of the case that he claims would have been supported by Melvin and Brock's testimony. In addition to the testimony of Movant and Hoskins, the motion court had before it a memorandum prepared by Hoskins for his file, dated September 27, 2002, which was fourteen days before the trial began, in which he relates, "I spoke with [Movant].... He does not have any alibi witnesses at this time, but he is working on it." Subsequent to giving Hoskins a list of possible witnesses, there is no evidence that Movant furnished Hoskins with any additional information prior to trial.

The motion court's findings of fact and conclusions of law relevant to this appeal are as follows:

> Melvin's testimony would not have aided in the defense of the case. [Hoskins] asked him to remain out of the courtroom so that a witness would not identify him as the man who came to her bar and picked up [M]ovant and [Cooper]. This, alone, is sufficient to justify the decision not to call him as a witness. Although it was not fully developed, Melvin also had prior convictions, and it would not have helped [M]ovant for the jury to know that his brother also had problems with the law. [Hoskins] was not ineffective for failing to call this witness at the criminal trial.
>
> ....
>
> This court saw and heard the testimony of witness Brock, and finds that his testimony at the trial would not have aided in the defense; and his testimony may well have had the opposite effect.
>
> It is not established that the testimony of any of these witnesses would have aided or provided a viable defense; and [Hoskins] was not ineffective because he did not call them to testify at the criminal trial.

"Under most circumstances, the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel." *Winder v. State*, 151 S.W.3d 413, 417 (Mo.App. S.D.2004). "[S]trategic choices made after a thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable[.]" *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. "However, where counsel lacks the information to make an informed judgment, because of inadequate investigation, any argument as to trial strategy is inappropriate." *Stott v. State,* 182 S.W.3d 728, 732 (Mo.App. S.D.2006). Trial counsel may be found ineffective for the failure to locate and call witnesses where Movant can demonstrate each of the following: "1) [t]rial counsel knew or should have known of the existence of the witness, 2) the witness could be located through reasonable investigation, 3) the witness would testify, and 4) the witness's testimony would have produced a viable defense." *Hutchison v. State,* 150 S.W.3d 292, 304 (Mo. banc 2004) (citing *State v. Harris,* 870 S.W.2d 798, 817 (Mo. banc 1994)).

In this case, it is clear that Hoskins knew of the existence of both Brock and Melvin. Additionally, there is no reason to believe that the witnesses couldn't have been easily located, and both Brock and Melvin indicated that they would have testified at Movant's trial if asked to do so. The factor the motion court found Movant failed to prove was whether the two witnesses would have provided Movant with a viable defense. We agree with the motion court that Brock and Melvin's testimony would not have offered a viable defense because such testimony does not account for Movant's whereabouts in and around the time the crimes were committed.

The theory proposed by Movant to the motion court, was that Movant sold the white Ford pick-up truck prior to the commission of the charged crimes, and therefore, any crimes committed involving the truck were committed by Cooper and someone else. Both Brock and Melvin said that Movant sold a white Ford pick-up truck the morning of July 17, 2001. Brock

explained that he saw the person who purchased the truck driving it later that afternoon. Melvin stated that he saw Movant off and on throughout the day, but he is unable to account for Movant's whereabouts from 10:00 a.m. to 6:00 p.m. Brock does not claim to know Movant's whereabouts at any time after the morning of July 17, 2001. Melvin's account of that evening is helpful to Movant in that it places Movant at home at around 6:00 p.m., but it also provides evidence that Movant was with Cooper from approximately 6:30 p.m. to 9:00 p.m. when he picked them up from the Well Manor bar.

While Melvin's deposition testimony contradicts Cooper's testimony at trial, the independent eyewitness testimony offered by the State supports Cooper's version of events rather than Melvin's. Cooper's testimony places Movant at the Henson house on the day of July 17, 2001. This is consistent with Berry's testimony, which places Movant and Cooper at the Henson house that same afternoon. While Movant was acquitted of the burglary charge, his presence with Cooper at the Henson house is important in that it supports Cooper's testimony. Cooper also explained that he and Movant received a ride to a bar in Wilhelmina, where they were later picked up by Melvin. This is consistent with Otto's testimony placing Cooper and Movant in the Wilhelmina Bar at 11:30 p.m. that night.

Movant presented no evidence at the hearing before the motion court negating the testimony of Cooper, Berry, and Otto, that Movant was with Cooper in and around the time the crimes were committed. To the contrary, Melvin's testimony placed Movant with Cooper during that time period, and all theories presented, either at trial or to the motion court, provide that Cooper was one of two perpetrators of the crimes. "If a potential wit-

ness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance of counsel." *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992).

■■■ We also note that Hoskins claimed he was never informed of the theory of defense presented to the motion court, and Movant offered no evidence, in the form of his own testimony or otherwise, contradicting Hoskins' assertion. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The reasonableness of investigation decisions depends critically on the information supplied by the defendant. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695–96. "[I]t is not unreasonable for trial counsel to rely on statements of the defendant in determining what defenses to pursue at trial[.]" *Anderson v. State*, 66 S.W.3d 770, 777 (Mo.App. W.D.2002).

After reviewing the record, we are not left with the definite and firm impression that a mistake has been made. The record supports the motion court's finding that trial counsel was not ineffective in the manner alleged by Movant. Movant's point is denied.

We affirm the denial of Movant's post-conviction motion.

BATES, C.J., and SHRUM, P.J., concur.