

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| MONTRELL MOORE, | ) | No. ED99996 |
| | ) | |
| Movant/Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Thomas J. Frawley |
| | ) | |
| Respondent. | ) | Filed: May 13, 2014 |

### Introduction

Montrell Moore (Movant) appeals the denial of his Rule 29.15 motion for post-conviction relief from his convictions and sentences for second-degree murder, child abuse resulting in death, endangering the welfare of a child, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. Movant claims his trial counsel was ineffective for: (1) failing to call a witness at trial; and (2) failing to elicit testimony from the emergency room physician and medical examiner that someone other than Movant could have caused the child's injuries. We affirm.

## Factual Background

Viewed in the light most favorable to the verdict, the evidence shows that in June 2009, Movant was living with his girlfriend, L.C., and her two children, S.B. (age 2) and R.W., (age 9)[1] at an apartment complex in the City of St. Louis. On the evening of June 26, 2009, L.C.'s sister, T.C. (age 15) was staying overnight at the apartment to help care for S.B. After giving S.B. a bath, L.C. took him downstairs around 11:00 p.m. where he slept on a sectional couch. L.C. did not notice any unusual marks or injuries on S.B. when she gave him a bath, nor did he fall or have any accidents while in her care. During the night, L.C. heard S.B. whining so she went downstairs to check on him and saw that Movant was in the kitchen. At that point, Movant stated, "there ain't nothing wrong with that little n---er." L.C. and Movant exchanged words before going back upstairs to sleep. At around 3:00 a.m., T.C. went to sleep on the couch at the opposite end of where S.B. was sleeping. Around the same time, S.B. woke up and was "fussy" and "loud," so T.C. turned on the television for a while. Around 4 a.m., S.B. fell back asleep on the couch. T.C. also went back to sleep.

L.C. got up around 4:30 a.m. to get ready for work. L.C. tucked in S.B., who looked at her, and she told him to go back to sleep. As she was leaving for work around 5:00 a.m., L.C. briefly woke up T.C. to remind her to buy milk for S.B. L.C. left for work and T.C. went back to sleep and did not awaken until hearing knocks at the door when paramedics arrived. Around 8:00 a.m., Movant called L.C. at work to notify her that S.B. had been taken to the emergency room because "his face was peeling." L.C. left

---

[1] R.W. was staying at her grandmother's home on the day in question.

work and headed to the hospital. Movant told L.C. that he had found S.B. "drinking Fabuloso," a cleaning fluid. Upon arrival at the hospital, S.B. was not breathing and in complete cardiopulmonary arrest. The emergency room physician on duty that morning, Dr. Parisa Jamshidi, found a burn on S.B.'s face that was consistent with scalding and immersion under a "very hot liquid." There was no indication that S.B. had ingested or spilled a chemical cleaning fluid on himself. S.B. had no burns inside of his mouth or in his eyes. Dr. Jamshidi indicated that S.B. was most likely not conscious when he sustained the burn injury. Dr. Jamshidi also found a bruise on S.B.'s face and "very large bruises" in the shape of "hand prints," "finger marks," and "fist marks" on the lateral side of S.B.'s upper trunk along the rib cage.

When hospital personnel informed Movant that S.B. could not be revived, Movant began hitting the walls and saying that he "was sorry" and he "didn't mean to do anything." By the time L.C. arrived at the hospital, S.B. had already died. At that point, L.C. hit Movant and asked him what he did to her son. Movant said that he was "sorry" and that he "didn't do anything." Movant initially told L.C. that S.B. was running the water in the tub when Movant found him. However, Movant told police that after hearing a loud noise, he found S.B. motionless at the bottom of the stairs. Movant also told police that S.B. had knocked a television off of an upstairs dresser. After police informed Movant that his explanations were not consistent with the facts and S.B.'s injuries, Movant admitted that he had struck S.B. "back and forth" several times with the inside and outside of his hand. He later wrote an apology letter to L.C. from jail, stating

3

that he "was sorry." Movant also admitted that he fabricated the stories about how S.B. was injured.

The medical examiner, Dr. Raj Nanduri, found that S.B. had sustained a blunt injury on his forehead, contusions that caused a bruise inside his lip, and bruises on top of his head. Dr. Nanduri determined that the burn on S.B.'s face was sustained around the time of his death and that it was consistent with a scalding injury caused by immersion, and not from a chemical cleaning fluid. S.B. also had hemorrhaging under the skin on his head, bruising of the chest wall, extensive hemorrhaging underneath the skin on his sides, three broken ribs on his left side, and two broken ribs on his right side. The broken ribs on both sides were pushed inward and had punctured his lungs. He had bruising on his heart, a large tear in the liver, a lacerated spleen, and a bruised and lacerated kidney. The cause of death was determined to be abdominal blunt force trauma.

Movant was charged by indictment with first-degree murder (Count I),[2] abuse of a child resulting in death (Count II), endangering the welfare of a child in the first degree (Count III), possession of a controlled substance (Count IV),[3] possession of marijuana (Count V), and possession of drug paraphernalia (Count VI). The matter was tried to a jury and Movant was found guilty of second-degree murder and all remaining counts. The trial court sentenced Movant to life imprisonment on Counts I and II, and seven years' imprisonment on Counts III and IV, to run consecutively. Movant was sentenced

---

[2] Count one of the indictment also charged Movant, in the alternative, with second-degree murder. The jury was instructed on both first-degree and second-degree murder.

[3] The drug-related charges stemmed from a search of the apartment during which police discovered marijuana, heroin, and drug paraphernalia.

to one-year terms on Counts V and VI, to run concurrently with each other and the sentences for Counts I through IV.

On direct appeal, this Court affirmed Movant's convictions and sentences in *State v. Moore*, 354 S.W.3d 257 (Mo. App. E.D. 2011). Movant subsequently filed a *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion alleging, *inter alia*, that counsel was ineffective for: (1) failing to call a witness at trial; and (2) failing to elicit testimony from the emergency room physician and medical examiner that someone other than Movant could have caused S.B.'s injuries. After an evidentiary hearing, the motion court issued its judgment, denying post-conviction relief. Movant appeals.

**Standard of Review**

Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). The motion court's judgment is clearly erroneous if, after a review of the record, we are left with the definite and firm impression that a mistake has been made. *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005). The motion court's findings are presumed correct. *Id*. We defer to the motion court's determinations regarding witness credibility. *Sanchez v. State*, 330 S.W.3d 847, 850 (Mo. App. S.D. 2011).

To establish ineffective assistance of counsel, the movant must prove by a preponderance of the evidence that: (1) counsel failed to exercise the level of skill and diligence of a reasonably competent attorney; and (2) that he was thereby prejudiced.

5

*Zink*, 278 S.W.3d at 175 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). To show prejudice, the movant must show that but for counsel's errors, there is a reasonable probability that the outcome would have been different. *Zink*, 278 S.W.3d at 176.

## Discussion

### *Point I: Failure to Call Witness at Trial*

In his first point, Movant contends that his trial counsel was ineffective for failing to call Tayrean Smith to testify as a defense witness at trial. Movant claims that Smith would have testified that he never saw Movant interact inappropriately with S.B, that he was at Movant's residence on a daily basis, that Movant encouraged S.B. and played games with him, and that Smith never witnessed Movant physically disciplining S.B. Movant claims this evidence would have contradicted R.W.'s and T.C.'s testimony that Movant had a propensity to harm S.B. and that S.B. was afraid of Movant.[4]

To prevail on a claim of ineffective assistance for failure to call a witness, the movant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would have testified; and 4) the witness's testimony would have provided a viable defense. *Worthington*, 166 S.W.3d at 577. Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffectiveness unless the movant clearly establishes otherwise. *Id.* If a potential

---

[4] At trial, L.C.'s daughter, R.W., testified that she had observed Movant strike S.B. on numerous occasions when L.C. was not home. T.C. testified that S.B. was afraid of Movant and would "start whining" and run when Movant was at the apartment.

6

witness's testimony would not unqualifiedly support the defendant's case, the failure to call the witness does not constitute ineffective assistance. *Id.*

"The reasonableness of investigation decisions depends critically on the information supplied by the defendant." *Hufford v. State*, 201 S.W.3d 533, 539 (Mo. App. S.D. 2006) (quoting *Strickland*, 466 U.S. at 691). Movant claims that counsel's attempt to contact Smith was not reasonable because counsel allegedly incorrectly transcribed the last digit of the phone number provided by Movant.

At the evidentiary hearing, trial counsel testified by deposition that he tried to contact Smith at the phone number provided by Movant but was unable to reach him. Counsel said that when he informed Movant that he was unable to reach Smith at that number, Movant provided another phone number, which turned out to be a wrong number. Counsel also attempted to obtain Smith's home address but was unsuccessful. Movant provided no additional information to assist counsel in locating Smith.

Movant testified that he gave Smith's phone number to counsel and that counsel informed him that he was unable to reach Smith. Movant acknowledged that he did not provide his attorney with any additional information to help locate Smith. Movant also acknowledged that he was aware that Smith was in the courtroom during his trial but Movant did not inform counsel of Smith's presence. Movant also admitted that he had lied to his attorney about what happened.

Smith also testified at the evidentiary hearing. Smith said that in the months preceding Movant's crimes, he lived in the same apartment complex as Movant, that he never saw Movant hit S.B., and that S.B. did not appear to be afraid of Movant. Smith

7

said that he did not know T.C. or R.W. Smith also indicated that he was not at L.C.'s apartment during the time that S.B. sustained his injuries.

In its order denying post-conviction relief, the motion court found that Smith had "no credibility." The motion court further found that Smith's proposed testimony would not have unqualifiedly supported the defense's case because Smith was not present at the scene because he worked during the day and stayed at his girlfriend's home at night.

The motion court's findings are supported by the record. The record clearly shows that counsel made a diligent effort and used reasonable means to contact Smith. After counsel informed Movant that he was unable to reach Smith, Movant provided no additional information to assist counsel in locating Smith. Movant also fails to explain why he did not inform counsel that Smith was present in the courtroom on the day of trial.

In any event, Movant fails to demonstrate that Smith's testimony would have provided a viable defense. *See Williams v. State*, 168 S.W.3d 433, 442 (Mo. banc 2005). Smith admitted that he was not present at Movant's apartment during the time that S.B. sustained his fatal injuries. Moreover, there was strong evidence of Movant's guilt, including the medical testimony and physical evidence. Movant was the only adult in the apartment with S.B. at the time he sustained his fatal injuries. Movant admitted to police that he struck S.B. and that he fabricated stories to explain what happened to S.B. Movant said that he was "sorry" and "didn't mean to do anything." There was also evidence that Movant had struck S.B. on previous occasions. On one occasion, Movant punched S.B. in the stomach with enough force causing S.B. to throw up.

8

Given the overwhelming evidence of Movant's guilt, there is no reasonable probability that the jury would have reached a different outcome had Smith testified. *See Bucklew v. State*, 38 S.W.3d 395, 400-01 (Mo. banc 2001). Accordingly, the motion court did not clearly err in finding that counsel was not ineffective for failing to call Smith as a witness. Point I is denied.

### Point II: Medical Testimony Regarding S.B.'s Injuries

In his second point, Movant contends that defense counsel was ineffective for failing to elicit testimony from the emergency room physician and medical examiner that the bruises on S.B. could have been caused by L.C., or someone who performed cardiopulmonary resuscitation (CPR) on S.B.

"Provided the decision is reasonable, a deliberate and informed choice to pursue one defense over another is a matter of trial strategy that cannot form the basis of a claim of ineffective assistance of counsel." *Francis v. State*, 183 S.W.3d 288, 300 (Mo. App. W.D. 2005). "The choice of one reasonable trial strategy over another is not ineffective assistance." *Strong v. State*, 263 S.W.3d 636, 642 (Mo. banc 2008). Trial strategy decisions may only serve as a basis for ineffective assistance claims if they are unreasonable. *Id.* A strategic decision is reasonable if it was made with the same skill and diligence that another reasonably competent attorney would use under similar circumstances. *Whitt v. State*, 366 S.W.3d 669, 674 (Mo. App. E.D. 2012).

At trial, the State presented medical testimony and evidence to establish that the bruising and injuries found on S.B.'s body were likely caused by a person of large stature such as Movant, who at the time of the trial was 6'8" tall and weighed approximately

9

two-hundred-seventy-five pounds. The emergency room physician, Dr. Parisa Jamshidi, testified that S.B. had "very large bruises" in the shape of "hand prints," "finger marks," and "fist marks" on the lateral side of his upper trunk along the rib cage. When the prosecutor questioned Dr. Jamshidi whether a "large hand" could have caused S.B.'s bruising, the doctor replied, "Yes." During cross-examination, defense counsel questioned Dr. Jamshidi about the size of the bruises found on S.B.'s body. Counsel asked the doctor if the bruising on S.B. could be consistent with a "smaller fist or hand." Dr. Jamshidi responded, "I don't think so." The medical examiner, Dr. Raj Nanduri, testified that S.B. had bruises on the sides of his chest and back. Dr. Nanduri said that the same type of injury could be expected in an automobile accident, or small aircraft accident, or after a boxing match.

At the evidentiary hearing, defense counsel said that he did not attempt to establish that L.C. could have caused S.B.'s injuries because she had a "very good alibi," in that, she was at work during the time that S.B. sustained his fatal injuries. Counsel also indicated that S.B.'s injuries went far beyond any injuries that the child could have sustained as a result of CPR. Following the post-conviction hearing, the motion court issued its order, finding that defense counsel's decision not to pursue a defense theory that L.C. or CPR caused S.B.'s injuries was reasonable as a matter of trial strategy. We agree.

"The question in an ineffective assistance claim is not whether counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." *Henderson v. State*, 111 S.W.3d 537,

10

540 (Mo. App. W.D. 2003). In the instant case, counsel gave a reasonable explanation for his decision not to pursue a defense theory that the child's mother could have inflicted the fatal injuries. Counsel concluded there was no basis for pursuing this particular line of defense because it was undisputed that L.C. was at work during the time that S.B. sustained his fatal injuries. There was also no evidence that CPR caused the child's fatal injuries. The overwhelming evidence supported the jury's conclusion that Movant caused S.B.'s death. Defense counsel's decision to abandon a non-viable defense theory was reasonable trial strategy. *See Hamilton v. State*, 208 S.W.3d 344, 349 (Mo. App. S.D. 2006). Accordingly, the motion court did not err in denying this claim. Point II is denied.

## Conclusion

For the foregoing reasons, the motion court did not clearly err in denying Movant's Rule 29.15 motion for post-conviction relief. The judgment of the motion court is affirmed.

_____
Philip M. Hess, Judge

Lisa Van Amburg, P.J. and
Patricia L. Cohen., J. concur.

11